[No. 22296–1–I.   Division One.   October 9, 1989.]

RICHARD A. WOOLWORTH, ET AL, *Respondents,* v. MICOL LAND COMPANY, *Appellant.*

*Mark M. Demaray* and *Beresford, Booth, Baronsky & Trompeter,* for appellant.

*Robert B. Leslie* and *Hatch & Leslie,* for respondents.

SCHOLFIELD, J.—Micol Land Company appeals the trial court's judgment and decree quieting title to a certain piece of real property in the Woolworths. We affirm.

## FACTS

On May 10, 1984, Micol Land Company (two couples, the Michelsons and the Collinses, hereinafter Micol) and the Woolworths' predecessors in interest, the Bakers, were granted real property security interests in certain property located in the City of Everett, in Snohomish County. The interests were created by two deeds of trust executed by Mark and Robin Benson, the owners of the property. The Bakers' deed of trust was recorded prior to that of Micol. On June 20, 1984, the Bensons conveyed all of their interest in the property to Yancy D. Hardy.

Hardy defaulted on the obligations of both deeds of trust, and filed a petition for bankruptcy in the United States Bankruptcy Court for the District of Oregon on December 20, 1985. Micol received notice of the bankruptcy on January 25, 1986.

The Bakers commenced nonjudicial foreclosure on their deed of trust by mailing notice and recording their notice of trustee's sale on or about December 30, 1985. This was subsequent to Hardy's bankruptcy filing, but before creditors received notice of the bankruptcy on January 25, 1986, and during the time period of the automatic stay provided for by 11 U.S.C. § 362.[1] Micol, along with other interested parties, received notice of the foreclosure.

Without seeking relief from the automatic stay in bankruptcy court, the Bakers proceeded with the foreclosure and purchased the property at their own trustee's sale on May 2, 1986. Micol's lien was thereby extinguished, pursuant to RCW 61.24.050.[2] On September 24, 1986, the Bakers conveyed the property by statutory warranty deed to the Woolworths. It appears that Micol took no action to either seek to restrain the trustee's sale for cause or to bid at the sale. Neither did Micol seek relief in federal bankruptcy court. Apparently, neither Hardy nor his bankruptcy trustee sought relief from the foreclosure sale in either state court or bankruptcy court. The Hardy bankruptcy was closed and Hardy discharged May 13, 1986.

On November 16, 1987, Micol filed a notice of trustee's sale to attempt to foreclose on its lien. Prior to the date of sale, the Woolworths instituted a lawsuit seeking to enjoin Micol's foreclosure proceedings, and seeking a judgment quieting title in the Woolworths. On February 18, 1988, the trial court enjoined Micol's pending trustee's sale on the basis that Micol's lien was extinguished by the first foreclosure.

---

[1] The text of this statute is set forth on pages 677–78.

[2] RCW 61.24.050 reads as follows: "The deed of the trustee, executed to the purchaser, shall convey the interest in the property which the grantor had or had the power to convey at the time of the execution by him of the deed of trust, and such as he may have thereafter acquired. After sale, as in this chapter provided, no person shall have any right by statute or otherwise to redeem from the deed of trust or from the sale."

On March 10, 1988, the Woolworths moved for summary judgment. The trial court granted their motion, and quieted title to the property in the Woolworths. This appeal timely followed.

### VALIDITY OF FORECLOSURE SALE

RCW 61.24.040 sets forth the procedure for foreclosing on a deed of trust:

**Foreclosure and sale—Notice of sale.** A deed of trust foreclosed under this chapter shall be foreclosed as follows:

(1) At least ninety days before the sale, the trustee shall:

(a) Record a notice in the form described in RCW 61.24-.040(1)(f) in the office of the auditor in each county in which the deed of trust is recorded;

(b) If their addresses are stated in a recorded instrument evidencing their interest, lien, or claim of lien, or an amendment thereto, or are otherwise known to the trustee, cause a copy of the notice of sale described in RCW 61.24.040(1)(f) to be transmitted by both first class and either certified or registered mail, return receipt requested, to the following persons or their legal representatives, if any, at such address:

(i) The grantor or the grantor's successor in interest;

(ii) The beneficiary of any deed of trust or mortgagee of any mortgage, or any person who has a lien or claim of lien against the property, that was recorded subsequent to the recordation of the deed of trust being foreclosed and before the recordation of the notice of sale;

. . . .

(iv) The last holder of record of any other lien against or interest in the property that is subject to a subordination to the deed of trust being foreclosed that was recorded before the recordation of the notice of sale; and

(v) The last holder of record of the lien of any judgment subordinate to the deed of trust being foreclosed;

. . . .

(4) On the date and at the time designated in the notice of sale, the trustee or its authorized agent shall sell the property at public auction to the highest bidder. . . .

. . . .

(7) The purchaser shall forthwith pay the price bid and on payment the trustee shall execute to the purchaser its deed; the deed shall recite the facts showing that the sale was conducted in compliance with all of the requirements of this chapter and of the deed of trust, which recital shall be prima facie evidence of such compliance and conclusive evidence thereof in favor of bona fide purchasers and encumbrancers for value . . .

Once a nonjudicial foreclosure of a deed of trust has been commenced, an interested party (*i.e.*, the grantor or the holder of a subordinate lien) may halt the proceedings either by curing the default or, on proper grounds, restraining the sale. RCW 61.24.090, setting forth the process under which a default may be cured prior to the trustee's sale, states in pertinent part:

**Curing defaults before sale—Discontinuance of proceedings—Notice of discontinuance—Execution and acknowledgment.** (1) At any time prior to the eleventh day before the date set by the trustee for the sale in the recorded notice of sale, . . . the grantor or his successor in interest . . . or any person having a subordinate lien or encumbrance of record on the trust property or any part thereof, shall be entitled to cause a discontinuance of the sale proceedings by curing the default or defaults set forth in the notice, which in the case of a default by failure to pay, shall be by paying to the trustee:

(a) The entire amount then due under the terms of the deed of trust and the obligation secured thereby, other than such portion of the principal as would not then be due had no default occurred, and

(b) The expenses actually incurred by the trustee enforcing the terms of the note and deed of trust, including a reasonable trustee's fee, together with the trustee's reasonable attorney's fees, together with costs of recording the notice of discontinuance of notice of trustee's sale.

. . . .

(3) Upon receipt of such payment the proceedings shall be discontinued, the deed of trust shall be reinstated and the obligation shall remain as though no acceleration had taken place.

. . . .

(5) Any person having a subordinate lien of record on the trust property and who has cured the default or defaults pursuant to this section shall thereafter have included in his lien all payments made to cure any defaults . . .

(6) If the default is cured and the obligation and the deed of trust reinstated in the manner hereinabove provided, the trustee shall properly execute, acknowledge and cause to be recorded a notice of discontinuance of trustee's sale under such deed of trust. . . .

RCW 61.24.130 provides for a restraint of the trustee's sale as follows in pertinent part:

**Restraint of sale by trustee—Conditions—Notice.** (1) Nothing contained in this chapter shall prejudice the right of

the grantor, the grantor's successor in interest, or any person who has an interest in, lien, or claim of lien against the property or some part thereof, to restrain, *on any proper ground,* a trustee's sale. . . .

. . . .

(2) No court may grant a restraining order or injunction to restrain a trustee's sale unless the person seeking the restraint gives five days notice to the trustee and the beneficiary of the time when, place where, and the judge before whom the application for the restraining order or injunction is to be made. . . .

. . . .

(4) If a trustee's sale has been stayed as a result of the filing of a petition in federal bankruptcy court and, after the period for continuing sale as allowed by RCW 61.24.040(6), an order is entered in federal bankruptcy court granting relief from the stay or closing or dismissing the case, or discharging the debtor with the effect of removing the stay, the trustee may set a new sale date which shall be less than forty–five days after the date of the bankruptcy court's order. . . .

(Italics ours.) While an interested party has the opportunity to halt a foreclosure proceeding under certain circumstances, this action must be taken *before* the trustee's sale, or the interested party may be precluded from obtaining relief.

In *Peoples Nat'l Bank v. Ostrander,* 6 Wn. App. 28, 491 P.2d 1058 (1971), Peoples, the purchaser of property at a trustee's sale, commenced an unlawful detainer action to obtain possession of the property from Ostrander, who had defaulted on the underlying obligation. Ostrander had taken no action with regard to the trustee's sale, nor did he bid at the sale, although he was properly notified pursuant to RCW 61.24. After the trustee's deed was issued, Ostrander refused to relinquish possession, and Peoples commenced an action. The trial court granted summary judgment in favor of Peoples, and Ostrander appealed.

In its analysis, the *Ostrander* court noted that RCW 61.24, the Washington trust deed act, was designed to avoid time–consuming judicial foreclosure proceedings. The court stated that RCW 61.24.130 afforded the trust deed grantor the right to restrain a threatened sale upon proper grounds. *Ostrander,* at 31–32. Having determined that Ostrander

was aware of the pending trustee's sale more than 4 months before it occurred, the *Ostrander* court held that he was precluded from asserting his defense of fraud after the sale was completed. *Ostrander,* at 32. The court stated:

> To allow one to delay asserting a defense until this late stage of the proceedings would be to defeat the spirit and intent of the trust deed act. We hold RCW 61.24.130 affords the grantor an adequate remedy at law . . .

*Ostrander,* at 32.

Applying the *Ostrander* analysis to the facts before us, it would appear that, having received timely notice of the Bakers' foreclosure, Micol is precluded from seeking to set aside the trustee's sale, and that Micol's junior lien was extinguished by the completion of the foreclosure sale, under state law. However, Hardy, the property owner at the time of the foreclosure, had filed a petition in bankruptcy. Under the preemption doctrine, federal bankruptcy law, if in conflict, takes precedence over state law in this circumstance.[3]

The federal Bankruptcy Code, 11 U.S.C. § 362 provides for an automatic stay of certain actions as follows in pertinent part:

> (a) . . . a petition filed under section 301, 302, or 303 of this title[4] . . . operates as a stay, applicable to all entities, of—
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

---

[3]Article 1, section 8 of the United States Constitution gives Congress the power to establish uniform laws on the subject of bankruptcies. An individual state cannot tax or otherwise control operation of valid laws enacted by Congress, when such laws are carrying into effect powers vested in the federal government. *See McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 4 L. Ed. 579 (1819); *Sturges v. Crowninshield,* 17 U.S. (4 Wheat.) 122, 4 L. Ed. 529 (1819).

[4]Section 301 provides for the commencement of a voluntary case; section 302 provides for the commencement of a joint case; and section 303 provides for the commencement of an involuntary case.

. . . .

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

. . . .

. . . .

(c) Except as provided in subsections (d), (e), and (f) of this section—

(1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate; . . .

. . . .

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; . . .

. . . .

. . . .

(h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

Micol argues that actions taken in violation of the automatic stay are void. In support of his contention, he cites *In re Wingo*, 89 Bankr. 54 (Bankr. 9th Cir. 1988), and other cases. Woolworth contends that Baker's foreclosure sale was not void, but merely voidable, and that only the debtor or the trustee in bankruptcy had the authority to object to the sale. Woolworth relies upon the reasoning in *In re Brooks,* 79 Bankr. 479 (Bankr. 9th Cir. 1987), *aff'd,* 871 F.2d 89 (9th Cir. 1989). The federal cases contain conflicting statements relative to whether transactions taken in violation of a bankruptcy stay are void or merely voidable. These cases will not be discussed in this opinion, as we have concluded that the trial court should be affirmed on other grounds.

STANDING

The purpose of the automatic stay is to retain the status quo at time of filing so that no creditor can gain an advantage over other creditors and administration of the estate can proceed in an orderly manner pursuant to the bankruptcy code. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1977).

■ *In re Globe Inv. & Loan Co.,* 867 F.2d 556 (9th Cir. 1989) addressed the issue of standing under section 362, stating in part at page 559:

> The appellees argued, and the district court concluded, that section 362 is intended solely for the benefit of the debtor estate. The appellees' position is supported by the majority of courts which have considered standing under section 362.

(Footnote omitted.)

The *Globe* court cited in support of the above statement *In re Brooks,* 79 Bankr. 479, 481 (Bankr. 9th Cir. 1987), *aff'd,* 871 F.2d 89 (9th Cir. 1989); *In re Stivers,* 31 Bankr. 735 (Bankr. N.D. Cal. 1983); *In re Fuel Oil Supply & Terminaling, Inc.,* 30 Bankr. 360, 362 (Bankr. N.D. Tex. 1983); *In re Silverman,* 42 Bankr. 509, 516 (Bankr. S.D.N.Y. 1984). The court then stated that "[a]lthough it is questionable whether creditors of an estate may invoke the protections of section 362, we need not make that determination in this case", and proceeded to decide the case on other grounds. *Globe,* at 559. The cases cited by the *Globe* opinion strongly support the proposition for which they are cited. *In re Brooks, supra* at 481 ("Consequently, if the debtor or the trustee chooses not to invoke the protections of § 362, no other party may attack any acts in violation of the automatic stay."); *In re Stivers, supra* at 735 ("I conclude that the automatic stay operates in favor of debtors and estates (represented by trustees and debtors–in–possession) only and that it gives junior lienholders and other parties interested in the property affected by the automatic stay no substantive or procedural rights."); *In re Fuel Oil Supply & Terminaling, Inc.,* at 362 ("The automatic stay is

for the benefit of the debtor and if it chooses to ignore stay violations other parties cannot use such violations to their advantage"). *In re Silverman, supra* at 516 (citing with approval *In re Stivers, supra,* and *Fuel Oil Supply & Terminaling, Inc.*).

While there is federal case law to the contrary, we find the majority rule as stated in *Globe* more persuasive. The clear purpose of the legislative scheme involving the automatic stay is fully served by limiting its enforcement to the debtor and the trustee. The rights of creditors are fully protected in the administration of the bankruptcy estate. To allow the stay to be used to benefit an individual creditor where the debtor and the trustee have waived any objection to the action taken in violation of the stay, appears to be contrary to its primary purpose. The rule limiting enforcement of stay provisions to the debtor and trustee, thus, is consistent with the purpose of the stay.

In this case, Micol filed its attempted foreclosure long after the bankruptcy was closed. Section 549(d) provides that an action to recover property may not be commenced after the case is closed. *In re Brooks, supra* at 481. Thus, Micol is asserting an action here that even the trustee could not pursue at this time.

## CONCLUSION

The Baker foreclosure was valid under state law, and Micol lost its right to object by failing to take timely action as required by *Ostrander*. Even if Micol had standing to assert a cause of action based upon a violation of the stay, it failed to take action while the Hardy bankruptcy was in process, and thereby lost whatever rights it had by inaction.

WEBSTER and PEKELIS, JJ., concur.