[No. 20797–1–I.   Division One.   April 23, 1990.]

HAROLD J. MARSH, ET AL, *Respondents,* v. COMMONWEALTH
LAND TITLE INSURANCE COMPANY,
*Appellant.*

*Robert E. Ordal* and *David Kerruish,* for appellant.

*Laurason T. Hunt* and *Mary L. Gaudio,* for respondents.

SCHOLFIELD, J.—Commonwealth Land Title Insurance Company appeals from a judgment in favor of Harold and Violet Marsh for $288,773.14. Commonwealth, as escrow agent, recorded a deed of trust containing an incorrect legal description. Commonwealth corrected the legal description and rerecorded the deed of trust within 90 days of the Marshes filing for bankruptcy. The deed of trust was security for a major loan to the Marshes. The recording and rerecording created the possibility the rerecording could be avoided as a preference in bankruptcy. This would result in the property in question becoming an asset in the bankruptcy. Faced with this risk, the Marshes paid $200,000 more in settlement of an unsecured creditor's claim than they could have settled for prior to the discovery of Commonwealth's mistake. In a bench trial, they recovered judgment for the $200,000 plus interest, costs and attorney's fees. We reverse.

FACTS

In late 1983, the Marshes sought to refinance and refurbish the Broadway Apartments, an apartment building they owned in Seattle. They agreed with State Bond and Mortgage Life Insurance Company to borrow $937,500, with which they would satisfy existing encumbrances and place State Bond in a first lien position by a deed of trust.

The Marshes hired Commonwealth to issue title insurance to State Bond and act as escrow agent. An escrow agreement was drafted by State Bond and executed by all the parties. The escrow agreement contained the correct legal description of the property:

Block 99, Terry's Second Addition to the City of Seattle, as recorded in Volume 1 of Plats, page 87, King County, Washington.

Exhibit 3.

The Marshes signed the deed of trust prepared by their attorney, Martin Fox, on October 28, 1983. It contained an erroneous legal description of the property, leaving out the word "Second". Fox had copied the description from a deed of trust held by one of the existing trust deed holders.[1]

Commonwealth closed the transaction on November 1, 1983, without noticing the discrepancy between the property description in the deed of trust and that in the escrow agreement. The parties dispute who prepared the final deed of trust that was filed in King County by Commonwealth on November 3, 1983, and the trial court found the evidence was insufficient to determine who had prepared that document. In any event, it too omitted "Second" from the legal description, but included "as per plat recorded in Volume 1 of Plats on page 87, records of King County, State of Washington." At that time, none of the parties were aware of the error.

Following trial of a completely separate action, a judgment in favor of Michael Wasnick and Chief Construction, Inc., (Wasnick) against the Marshes was announced orally in King County Superior Court on November 16, 1983. Entry of written judgment was scheduled for January 3, 1984. This judgment was unrelated to the Broadway Apartments. On December 12, 1983, State Bond informed Commonwealth that the legal description on the Marsh deed of trust was in error because the word "Second" was missing, and it asked Commonwealth to rerecord the deed with the proper description. Commonwealth did not inform the Marshes of the error, nor of the rerecording, but instead crossed off the incorrect description on the original deed, typed in the correct description, and rerecorded it on

---

[1]The import of this prior erroneous deed is that it, in conjunction with the later erroneous deed duplicating its error, creates the impression of a second and independent chain of title.

December 21, 1983. On December 30, 1983, the Marshes filed a Chapter 11 bankruptcy petition. The Marshes apparently were in a position to settle with all of their other creditors if they could settle with Wasnick on a favorable basis. They could then dismiss the bankruptcy. The Marshes claim they were close to settling with Wasnick when his attorney learned of the rerecorded deed on the Broadway Apartments. Wasnick's attorney argued that the initial filing of the trust deed was ineffective because of the incorrect legal description and that the rerecording within 90 days of filing the petition in bankruptcy operated as a voidable preference. Wasnick contends that the original deed provided no notice of State Bond's interest because the error in the property description placed the deed of trust outside the Broadway Apartments' chain of title.

Wasnick threatened legal action to have the disputed property made part of the bankruptcy estate, thereby substantially increasing the amount of money Wasnick might recover as an unsecured creditor. No legal action was ever commenced. In his negotiations, Wasnick's counsel argued that he had a 50–50 chance of prevailing on his preference theory.

The Marshes wrote Commonwealth in August 1984 of their settlement negotiations with Wasnick and of the Marshes' intent to seek indemnification from Commonwealth because of the error and rerecording. Commonwealth declined to participate in the matter, taking the view that its duty was to its insured, State Bond, and that if litigation ensued, it could successfully defend State Bond's claim of a first lien.

The Marshes argue that the possibility that State Bond's deed of trust might be set aside as a voidable preference, coupled with the cost and delays involved in litigating the issue, placed them in a position where they believed the wisest course of action for them was to settle with Wasnick in the principal amount of $350,000, which, they contend, was $200,000 more than they would have had to pay had the error and the rerecording not occurred.

The Marshes filed suit in April 1985 and received a judgment in July 1987, following a bench trial. The trial court found that Commonwealth breached its duty as a fiduciary and was negligent in failing to notice the erroneous legal description in the original trust deed. The trial court entered finding of fact 26, finding as follows:

> In this case, the defect in the recorded legal description was significant. This was not a mere typographical error that could not affect the security interest of the lender. A reasonably prudent escrow agent learning that an instrument had been recorded with the legal description of Block 99, Terry's Addition, when the correct legal description was Block 99, Terry's Second Addition, would have recognized that this error could have the effect of leaving the creditor unsecured.

The court also found that Commonwealth breached its fiduciary duty and was negligent in not notifying the Marshes of the error or the rerecording; that Commonwealth should have foreseen that the Marshes could have been harmed if State Bond's security interest had not been perfected at the time of the original recording; that the rerecording created a substantial question as to whether State Bond was a secured creditor; and that Commonwealth had breached its fiduciary duty by placing the Marshes in this vulnerable legal position.

In finding of fact 42, the court found that the rerecording constituted a voidable preference.[2] In finding of fact 42(a), however, the court found:

> Having determined that Commonwealth breached its fiduciary duties owing to the Plaintiffs, by putting Plaintiffs in a vulnerable legal position, it is not necessary to determine whether a bona fide purchaser would have been put on actual or constructive notice by the November 3, 1983, recording or whether the December 21, 1983, [recording] could have been

---

[2]It is clear from the findings and conclusions, considered in their entirety, that the trial judge did not intend to make a finding that the rerecording constituted a voidable preference. The trial court relied on the placing of the Marshes in a "vulnerable" legal position to support its finding of proximate cause. We therefore treat the entry of that part of finding of fact 42 as inadvertent.

set aside as a preference. The legal question presented by these facts has not been resolved by the Courts of Washington.

The court also found that Commonwealth's actions harmed the Marshes in their negotiations with Wasnick because prior to the discovery of the rerecording, the Marshes and Wasnick could have settled for $150,000. The court then proceeded to enter findings that the Marshes' settlement with Wasnick was legally justified because of the legal predicament caused by Commonwealth's mistake, followed by the failure to notify the Marshes of the error and the rerecording.

Commonwealth appeals from the judgment, asserting 44 assignments of error. The Marshes cross–appeal on one issue.

### WAS RERECORDING OF TRUST DEED A PREFERENCE?

The parties argue extensively in their briefs filed in this court regarding the likelihood of the rerecording being set aside as a preference if the issue were litigated to a final decision in the bankruptcy court.

A transfer of property does not occur until the security interest is perfected. Perfection does not occur until a bona fide purchaser of the property would be put on notice of the secured party's interest by the recorded trust deed. 11 U.S.C. § 547(e)(2).

The theory asserted by the Marshes is that if the November 3 recording of the deed of trust did not encumber the Broadway Apartments because of the incorrect legal description, then the rerecording could have been held to be a preference. In order to be a preference, it would have to benefit a creditor on an antecedent debt, be recorded within 90 days of the filing in bankruptcy, and at a time when the Marshes were insolvent. 11 U.S.C. § 547(b).

Whether the November 3 recording of the deed of trust encumbered the Broadway Apartments depends on whether the legal description contained therein was adequate to put

a bona fide purchaser on notice of State Bond's security interest. *In re Washburn & Roberts, Inc.,* 795 F.2d 870 (9th Cir. 1986). A bona fide purchaser (BFP) is defined in *Glaser v. Holdorf,* 56 Wn.2d 204, 209, 352 P.2d 212 (1960).

> A bona fide purchaser for value is one who without notice of another's claim of right to, or equity in, the property prior to his acquisition of title, has paid the vendor a valuable consideration. *Biles–Coleman Lbr. Co. v. Lesamiz,* 49 Wn. (2d) 436, 302 P. (2d) 198 [(1956)]; *Peterson v. Paulson,* 24 Wn. (2d) 166, 163 P. (2d) 830 [(1945)].

A purchaser has notice of another party's interest in the property if that purchaser possesses

> such information as would excite apprehension in an ordinary mind and prompt a person of average prudence to make inquiry; however, a circumstance which would lead a person to inquire is only notice of what a reasonable inquiry would reveal. *Paganelli v. Swendsen,* 50 Wn. (2d) 304, 311 P. (2d) 676 [(1957)].

*Glaser,* at 209.

Respondents concede that the Direct General Index for King County maintained by the King County Recorder's Office shows that on November 3, 1983, a deed of trust was recorded in favor of State Bond, with the legal description of "in Terry's Addition." Brief of Respondent, at 40. Both descriptions carried the same reference to volume 1 of plats, p. 87, records of King County, Washington. In this case, unlike *Koch v. Swanson,* 4 Wn. App. 456, 481 P.2d 915 (1971) (where the conflicting legal descriptions both described existing properties), a similarity between the descriptions should excite the suspicion of a reasonably competent title seeker. The reference to the same plat pages could normally be expected to alert a BFP that an error existed somewhere and that the reference to "Terry's Addition" was a reference to a nonexistent plat.

The trial court found in finding of fact 44 that the BFP issue was one "where under present case law there are no clear answers".

The trial court awarded damages to the Marshes on the theory that the mistake in the legal description and the

rerecording placed the Marshes "in a vulnerable legal position with respect to whether or not in the bankruptcy, State Bond was a secured creditor." Finding of fact 35.[3]

It is clear from the trial court's findings of fact that the basis of the damage award to the Marshes was that Commonwealth's mistake and rerecording placed the Marshes in a vulnerable legal position. The trial court did not define "vulnerable legal position." In the context in which the term was used by the trial court, the term apparently meant no more than a realistic possibility of an adverse decision. The findings reflect the court's view that, if litigated, the possibility the rerecording could be adjudged a preference could not be ignored by the Marshes. The trial court did not find as an ultimate conclusion of law that the Commonwealth mistake damaged the Marshes in any way other than placing them in a vulnerable legal position. Damages were awarded without a finding that the mistake caused direct actual damage to the Marshes. The trial court found, however, that Commonwealth's mistake was a proximate cause of the Marshes paying Wasnick $200,000 more in settlement than would otherwise have been necessary. This finding of proximate cause can be

---

[3]Findings of fact 35, 36 and 37 read as follows:

"Commonwealth breached its fiduciary duty to the Marshes by putting them in a vulnerable legal position with respect to whether or not in the bankruptcy, State Bond was a secured creditor. As a result of Commonwealth's actions, it was unclear whether State Bond was a secured creditor or whether, as Wasnick contended, State Bond's deed of trust could be set aside by the trustee in bankruptcy." Finding of fact 35.

"Because of Commonwealth's actions, clearly there was raised a substantial question as to the validity of State Bond's security interest in the Broadway. Gordon Willhite determined that there was at least a 50–50 chance of his prevailing on the issue that a bona fide purchaser would not have been put on actual or constructive notice by the November 3, 1983, recording and that the deed of trust would be set aside." Finding of fact 36.

"If the matter had been litigated, the issue might well have been referred by the Bankruptcy Court to the Supreme Court of the State of Washington since the issue involved state law. The November 3, 1983, recording with its incorrect legal description created a substantial issue as to whether or not in the bankruptcy proceeding State Bond was a secured creditor." Finding of fact 37.

reviewed as a conclusion of law. *King v. Seattle,* 84 Wn.2d 239, 250, 525 P.2d 228 (1974).

It is clear and undisputed that the Marshes as a matter of independent business judgment elected to make the $350,000 settlement with Wasnick. Until that settlement was paid, the Marshes had suffered no legal damage from the Commonwealth mistake. Whether or not the Commonwealth mistake would ever have caused the Marshes any actual damage was never determined.

Both parties proceed on the assumption that the oral judgment announced by a King County Superior Court Judge in awarding judgment against the Marshes and in favor of Wasnick for $700,000 on November 16, 1983, had the effect of rendering the Marshes insolvent. The trial court so found in finding of fact 53. Whether the oral announcement of the recovery made the Marshes insolvent is a mixed question of fact and law. In the factual context of this case, we review it as a matter of law.

■ Oral decisions rendered by a trial court at the conclusion of a trial are not final judgments and are subject to change until reduced to written judgment form and filed with the court clerk.

CR 54(a)(1) provides:

> (1) *Judgment.* A judgment is the final determination of the rights of the parties in the action and includes any decree and order from which an appeal lies. A judgment shall be in writing and signed by the judge and filed forthwith as provided in rule 58.

CR 58 provides:

> **(a) When.** Unless the court otherwise directs and subject to the provisions of rule 54(b), all judgments shall be entered immediately after they are signed by the judge.
>
> **(b) Effective Time.** Judgments shall be deemed entered for all procedural purposes from the time of delivery to the clerk for filing, unless the judge earlier permits the judgment to be filed with him as authorized by rule 5(e).

CR 54(e) and (f) set forth the procedure to be followed in the preparation and presentation of a written form of judgment and the supporting findings of fact and conclusions of law required by CR 52.

RCW 4.56.200(1) provides that a judgment lien on real estate commences with the "time of the entry" of the judgment.

It follows from the foregoing that there is no final judgment until a formal written judgment signed by the trial judge and supported by findings of fact and conclusions of law is filed with the clerk of the court. A memorandum or oral decision is not effective as a final judgment. *In re Marriage of Pratt,* 99 Wn.2d 905, 665 P.2d 400 (1983); *Department of Labor & Indus. v. Kennewick,* 99 Wn.2d 225, 661 P.2d 133 (1983).

■ It appears to be undisputed that the Wasnick judgment was not entered until sometime after December 30, 1983, the date the Marshes filed a Chapter 11 petition. It follows that when the trust deed was rerecorded on December 21, 1983, the Marshes had not yet been rendered insolvent by the Wasnick judgment because Wasnick had no final judgment at that time.

A preference requires a transfer at a time when the debtor is insolvent. There was no transfer to State Bond *after* the Marshes became insolvent because the mistake was corrected on December 21. It follows that State Bond's first lien position probably was unassailable by Wasnick because it was perfected when the Marshes were solvent. It should also be noted that entry of the judgment after filing in bankruptcy was in violation of the automatic stay provided in 11 U.S.C. § 362, and, in the event of litigation, was subject to being declared void. *Woolworth v. Micol Land Co.,* 55 Wn. App. 671, 677–78, 780 P.2d 264 (1989).

The many uncertainties, conjecture and speculation regarding what the end results would have been had Wasnick challenged the rerecording as a preference compels the conclusion, as a matter of law, that the mistake in the legal description was not the proximate cause of the damages awarded the Marshes by the trial court.

The Supreme Court of Washington has held that in those cases where there is a realistic possibility of correcting the wrongful act complained of by pursuing available legal

remedies, and the plaintiff by the voluntary exercise of independent business judgment elects not to pursue those available legal remedies, the defendant's wrongful act is not the proximate cause of plaintiff's damages.

In *King v. Seattle,* 84 Wn.2d 239, 525 P.2d 228 (1974), the Kings obtained a building permit and a street use permit, but the construction of their overwater building appeared to be blocked by a regulation of the United States Corps of Engineers requiring a permit. The Kings did not make application to the Corps for the permit, but abandoned the project by ultimately quitclaiming their interest in the property back to their vendor. They then sought damages from the City of Seattle based on the claim that the City intentionally acted to interfere with the Kings' business expectancy. The Supreme Court noted that the City's actions were a cause in fact of the Kings' damages and that the amount of damages was not disputed.

The *King* court then discussed proximate cause, pointing out that cause in fact is not the sole determinant of proximate cause. Cause in fact was found to be present in *King,* but the court held that the City was not liable to King because legal causation had not been shown. The basis of the court's decision was the failure of the Kings to exhaust their federal administrative remedies. At page 251, the court states reasoning particularly appropriate to the case at bar.

> Municipal liability for tortious interference with prospective economic advantage should not be premised on the independent unsubstantiated decision of a plaintiff that it would be unavailing to seek a possible administrative remedy accorded him under the law. If this were not so, the plaintiff would be able to create liability in another by his own independent judgment. We therefore find no legal liability (proximate cause) in the City for the plaintiffs' damages here.

Similar reasoning was controlling in *Hillis Homes v. Snohomish Cy.,* 32 Wn. App. 279, 647 P.2d 43, *review denied,* 98 Wn.2d 1011 (1982). Hillis filed a preliminary plat application, and the County did not act on it within 90 days as required by law. Hillis then sought mandamus,

which was granted, requiring the County to exercise its discretion on the application. Hillis, however, proceeded with its damage action. The trial court dismissed Hillis' claim on summary judgment, and the Court of Appeals affirmed the dismissal, relying upon *King v. Seattle, supra.*

At pages 284–85, the Court of Appeals opinion quotes with approval from *King,* at 252, as follows:

> We do not believe it would be wise judicial policy to allow one party to create legal liability in another by a voluntary exercise of the complaining party's own personal business judgment not to seek to protect his rights in the legal forums provided him. This is especially so where, if the complaining party had exercised his legal rights in the first place, there may well have been no damage to his interests at all.

In *Grader v. Lynnwood,* 53 Wn. App. 431, 767 P.2d 952 (1989), *review denied,* 113 Wn.2d 1001 (1989), Grader received a conditional use permit, but never applied for the necessary building permit. He also failed to apply for a variance permit, which could have resolved some of the disputes then existing between Grader and the City of Lynnwood. Even though he had received a favorable decision from the Court of Appeals in *Grader v. Lynnwood,* 45 Wn. App. 876, 728 P.2d 1057 (1986), Grader filed and pursued a damage action alleging due process and equal protection violations and also negligence and tortious interference with business expectations. For various business reasons, he did not pursue his building project. The jury returned a verdict of $1.65 million in his favor. The Court of Appeals concluded that the alleged misconduct of the City was not a proximate cause of Grader's damages because he did not pursue his legal remedies and, instead, elected to abandon the project and sue for damages.

We note, however, that *King, Hillis Homes,* and *Grader* are all cases involving failure to pursue an administrative remedy. In each of them, the only risk to be incurred in pursuing the remedy was the attendant costs and delays. The Marshes faced a dilemma which was somewhat different in nature, since an adverse decision in the bankruptcy court on the preference issue could cause them substantial

damages, as well as the costs and delays involved in pursuing the judicial remedy.

■ The basis of the decisions in *King, Hillis Homes,* and *Grader* was lack of proximate cause between the claimed misconduct and the claimed damages resulting therefrom. We believe the same reasoning applies here, even though the risks faced by the plaintiffs are somewhat different. Where it is highly speculative as to whether cause in fact exists between the claimed misconduct and the alleged damages, it follows that proximate cause has not been established.

As articulated in *King,* proximate cause consists of both cause in fact and legal cause. *King,* at 250. The City's actions were conceded in the opinion to be the cause in fact of plaintiffs' damages. The Kings' judgment was reversed because their failure to exhaust their federal administrative remedies defeated the requirement of legal causation, which the court said

> is always to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy, and precedent.

*King,* at 250 (quoting 1 T. Street, *Foundations of Legal Liability* 110 (1906)).

Whenever cause in fact is too speculative or legal causation is found to offend public policy, there is no proximate cause.

■ In the case before us, the Marshes elected to make a settlement with Wasnick rather than pursue their legal remedies. At the time of the settlement with Wasnick, the bankruptcy court was readily available to them as a forum for an expeditious resolution of the issue of whether or not rerecording of the State Bond trust deed amounted to a voidable preference. It appears highly unlikely that the bankruptcy court would have found the rerecording was a preference. The Marshes proceeded on the assumption that the oral announcement in superior court of a judgment in favor of Wasnick in the amount of $700,000 rendered them insolvent. From the record before us, it appears that this

was an incorrect assumption. It also appears unlikely that the initial recording of the State Bond trust deed, carrying an incorrect legal description of the property because the word "Second" was missing from the legal description, would have failed to give notice to a bona fide purchaser.

These circumstances all strongly indicate that litigation of the challenge to State Bond's first lien position as threatened by Wasnick would have resulted in a decision in favor of the Marshes in that State Bond's first lien position as of the date of the initial recording of the trust deed would have been upheld.

Under these circumstances, the claimed additional cost of settling with Wasnick was the result of an independent business decision by the Marshes, rather than a loss proximately caused by Commonwealth.

This result is consistent with the principle underlying cases based on implied indemnity that before indemnity will be allowed, the indemnitee must prove he was legally liable to the third party for the sums he seeks to recover in his indemnity action. *Nelson v. Sponberg,* 51 Wn.2d 371, 318 P.2d 951 (1957); *United Boatbuilders, Inc. v. Tempo Prods. Co.,* 1 Wn. App. 177, 179–80, 459 P.2d 958 (1969).

This is not a typical indemnity action because the alleged negligence of Commonwealth did not cause any loss or damage to Wasnick. Therefore, there is no basis for implying a duty on Commonwealth to indemnify the Marshes for any payments made to Wasnick. While this is a case of negligence, the plaintiffs are faced with the same proof problem as was faced by the plaintiff in *United Boatbuilders* with respect to proving liability to a third party for the sums they seek to recover and with the same proof problems with respect to proving proximate cause that were faced by the plaintiffs in the *King, Hillis Homes,* and *Grader* cases.

The trial court judgment was not based upon findings that the mistake of Commonwealth was the proximate cause of a loss to the Marshes. The finding was simply that the mistake of Commonwealth had placed the Marshes in a

vulnerable legal position. As explained heretofore in this opinion, under the facts of this case, simply being placed in a vulnerable legal position does not meet the requirement of proof of proximate cause between the alleged negligence and the claimed damages.

This case is remanded to the trial court for entry of an order of dismissal of plaintiffs' complaint.

SWANSON and PEKELIS, JJ., concur.

Reconsideration denied July 6, 1990.

Review denied at 115 Wn.2d 1025 (1990).