[No. 38636-1-I. Division One. February 23, 1998.]

MICHAEL R. MASTRO, ET AL., *Respondents*, v. KUMAKICHI CORPORATION, ET AL., *Appellants*.

*Thomas C. McCarthy* and *Michael T. Davis* of *Law Offices of Douglas W. Scott,* for appellants.

*Jackson Schmidt* of *Pepple, Johnson, Cantu & Schmidt, P.L.L.C.,* for respondents.

WEBSTER, J. — Kumakichi Corporation conveyed real property to Michael Mastro by statutory warranty deed. An adjacent landowner, Newhall/Jones, encroached upon the property at the time of the sale, but did not assert rights to the encroached portion until nearly one year after closing. Mastro sued Kumakichi and its shareholders, as successors in liability, for breaching the warranty deed covenants. The trial court awarded summary judgment in Mastro's favor, and Kumakichi and its shareholders appeal.

We affirm, finding that: (1) Kumakichi breached its duty to defend Mastro against the Newhall/Jones adverse possession claims when Mastro tendered defense to Kumakichi, and Kumakichi refused that tender; (2) Mastro did not abandon his claim against Kumakichi by settling the adverse possession dispute with Newhall/Jones; (3) the trial court did not abuse its discretion in denying Kumakichi's CR 15(a) motion to amend its answer to include a statute of limitations defense; and (4) Kumakichi's share-

holders are liable to Mastro because Kumakichi's liabilities under the warranty deed passed to them upon dissolution.

## FACTS

In September 1989, Kumakichi Corporation, represented by Thomas McCarthy and composed of shareholders Thomas, John, and Michael McCarthy, ("the McCarthys") conveyed to Michael Mastro by statutory warranty deed a piece of undeveloped real property. Before closing, Kumakichi discovered an encroachment by neighboring landowners Newhall/Jones after obtaining a title report from Commonwealth Title Insurance Company. At that time, McCarthy asked Newhall/Jones's predecessor landowner about the encroachment. This investigation led McCarthy to believe that the encroachment began with Newhall/Jones and would be insufficient to establish any adverse possession claim they might someday assert. Considering a several hundred dollar difference in cost for extended title coverage, and in light of the possibility that the encroachment would delay the transaction, Kumakichi changed title insurance companies and instead purchased a standard coverage policy. Mastro's agent in the transaction agreed to this change, and paid $750,000 in cash for the property. By April 6, 1990, Kumakichi distributed nearly all of the balance of its assets, which included the sale proceeds, to its shareholders the McCarthys. The corporation was administratively dissolved in November 1990.

Sometime before November 1990, Newhall/Jones sued under adverse possession theories to quiet title in the portion of the property on which it encroached. Mastro notified Kumakichi of this claim by letter on February 12, 1991. Kumakichi provided some assistance in this litigation, which was eventually appealed to this court by Newhall/Jones after the trial court granted summary judgment in Mastro's favor. This court remanded the matter for trial to determine the details of the property conveyance between two former landowners, the Matteses and the Smith Group. But Mastro and Newhall/Jones settled, without first notify-

ing Kumakichi or the McCarthys; Mastro anticipated defeat after obtaining a declaration from Mrs. Mattes that elucidated her intent when conveying the property.

As a result of the settlement, Mastro sued Kumakichi and the McCarthys for breach of the deed covenants, shareholder liability, and damages. The trial court granted partial summary judgment in Mastro's favor on January 16, 1996, entered its oral decision on February 23, 1996, and filed an amended final judgment of the court on April 23, 1996, awarding Mastro $165,284.15. Kumakichi and the McCarthys appeal these rulings.

## DISCUSSION

We review a trial court's summary judgment order de novo, considering the evidence in the light most favorable to the nonmoving party. *See CLEAN v. City of Spokane,* 133 Wn. 2d 455, 462, 947 P.2d 1169 (1997). Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* CR 56(c).

### Statutory Warranty Deed

■ ■ Washington's real property law defines warranty deeds by statute. *See* RCW 64.04.030. A warranty deed covenants against both known and unknown title defects. *See Foley v. Smith,* 14 Wn. App. 285, 292, 539 P.2d 874 (1975). And a grantor conveying land by statutory warranty deed makes five covenants against title defects:

> (1) that the grantor was seised of an estate in fee simple (warranty of seisin); (2) that he had a good right to convey that estate (warranty of right to convey); (3) that title was free of encumbrances (warranty against encumbrances); (4) that the grantee, his heirs and assigns, will have quiet possession (warranty of quiet possession); and (5) that the grantor will defend the grantee's title (warranty to defend).

17 WILLIAM B. STOEBUCK, WASHINGTON PRACTICE: REAL ESTATE:

PROPERTY LAW § 7.2, at 447 (1995) (hereinafter, STOEBUCK). These covenants include both "present" covenants, such as the warranty of seisin, which are breached at conveyance, and "future" covenants, which may be breached or become effective after conveyance. *See* 18 WILLIAM B. STOEBUCK, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 13.2, at 86 (1995). Where covenants under the warranty deed are breached, an injured grantee is entitled to recover both damages for lost property or diminution in property value, *see, e.g., Brown v. Carpenter*, 99 Wash. 227, 229, 169 P. 331 (1917), and attorney's fees incurred in defending title. *See Mellor v. Chamberlin*, 100 Wn.2d 643, 650, 673 P.2d 610 (1983).

## Breach of the Covenant of Seisin

In *Double L. Properties, Inc. v. Crandall*, 51 Wn. App. 149, 751 P.2d 1208 (1988), we held that the covenant of seisin is breached where an adverse possessor physically possesses land at conveyance, regardless whether the adverse possessor's claim is "rightful or wrongful." *Id.* at 156. Yet Kumakichi argues that to have breached the covenants of the warranty deed, Newhall/Jones first must have established a *lawful* claim against Mastro. Kumakichi deems such a claim lawful only by virtue of a decision rendered after litigation in the adverse possessor's favor.

But because Kumakichi argues the opposite position in its appeal presently pending before this court against the Parkinsons, who sold Kumakichi the disputed property, we do not consider this contention here.[1] In that appeal, Kumakichi conceded that it breached the covenant of seisin when it delivered the deed to Mastro while Newhall/Jones encroached.[2] Because this factual concession is central to Kumakichi's argument here that it did not breach the covenant of seisin merely by virtue of this encroachment, the doctrine of judicial estoppel precludes this argument on ap-

---

[1]*See Kumakichi Corp. v. Parkinson*, No. 40243-9-I (Wash. Ct. App. Jan. 26, 1998).

[2]*See* Appellant's Br. in *Kumakichi Corp. v. Parkinson*, No. 40243-9-I, at 9-10.

peal. *See, e.g., Mueller v. Garske,* 1 Wn. App. 406, 409, 461 P.2d 886 (1969) (citing 28 AM. JUR. 2D *Estoppel and Waiver* § 69, at 696 (1966)) ("A party is not permitted to maintain inconsistent positions in judicial proceedings. It is not as strictly a question of estoppel as it is a rule of procedure based on manifest justice and on a consideration of orderliness, regularity and expedition in litigation.").

## Breach of the Warranty to Defend

█ The warranty to defend is a future covenant that no lawful, outstanding claims against the property exist. *See* 6A RICHARD R. POWELL, POWELL ON REAL PROPERTY ¶ 900[2][d], [e] (Patrick J. Rohan ed., 1991). Because breaching this future warranty occurs only where there is either an actual or constructive eviction under paramount title, *see Foley v. Smith,* 14 Wn. App. 285, 539 P.2d 874 (1975), a third person's claim of superior right is usually established in a lawsuit between the grantee and the third party. 18 STOEBUCK § 13.4, at 97. For "it is not enough that the grantee believes that a third party has legal grounds for the eviction." ROGER A. CUNNINGHAM ET AL., THE LAW OF PROPERTY § 11.13, at 816 (Lawyer's ed. 1984).

## Effective Tender of Defense

██ In *Double L. Properties, Inc. v. Crandall,* we also held that a grantee successfully ejecting one claiming paramount title is entitled to recover from the grantor the expenses incurred in the ejectment action, so long as prior notice and demand to prosecute the action was given to the grantor. *See* 51 Wn. App. at 156. In other words, the grantee must make an effective "tender of defense" to the grantor before she is entitled to recover under the warranty to defend. As we described in *Dixon v. Fiat-Roosevelt Motors, Inc.,* 8 Wn. App. 689, 509 P.2d 86 (1973), this tender of defense:

> [I]s equivalent to "vouching in", a common law device by which a defendant notifies another (1) of the pendency of the suit against him, (2) that if liability is found, the defendant

will look to the vouchee for indemnity, (3) that the notice con-
stitutes a formal tender of the right to defend the action, and
(4) that if the vouchee refuses to defend, it will be bound in a
subsequent litigation between them to the factual determina-
tion necessary to the original judgment.

*Id.* at 692-93 (citations omitted). If such tender of defense
is inadequate, a third-party defendant may not be bound.
*See, e.g., id.* at 693 (finding tender of defense inadequate
where such notice did not provide third-party defendant
sufficient time to prepare a defense).

In the instant case, Mastro complains that he properly
tendered defense to Kumakichi by Mastro's letter from his
counsel. And because Kumakichi rejected that tender of
defense, Mastro argues he was free to settle his dispute
and then seek indemnity from Kumakichi. We agree.

Mastro's letter clearly and unambiguously meets the
criteria described in *Dixon*. First, Kumakichi and the Mc-
Carthys concede that the letter satisfies the first two *Dixon*
criteria. Second, the letter also satisfies the third criterion,
that the letter is a formal tender; "This letter . . .
provide[s] you . . . with formal written notice of certain
claims set forth herein[,]" and "We hereby tender the
defense of this claim by Plaintiffs Newhall and Jones
. . . ." Clerk's Papers at 245. Although Kumakichi and the
McCarthys argue that the fourth criterion is not met, we
find the letter's language sufficient to convey the conse-
quences of refusing to defend Mastro despite the statutory
warranty deed; "We . . . put you on notice of our client's
claims against you for all costs, expenses, losses and dam-
ages occasioned by this adverse possession/adverse use
claim of plaintiffs, including the loss and/or potential loss
of valuable vested building permits as to the property." *Id.*

Kumakichi argues the letter constituted only a partial
tender because it included strategic information and did
not exactly state the fourth *Dixon* criterion. But Kumaki-
chi offers no authority to support its "partial tender" the-
ory nor to suggest that an otherwise effective, unambigu-
ous tender letter is vitiated merely where one of the four

*Dixon* criteria is not set forth verbatim in that letter. And since nothing in the record indicates that either Kumakichi or the shareholders responded to Mastro's letter, we assume such failure to respond constitutes a refusal to defend. *See Dixon*, 8 Wn. App. at 692. Thus, we hold that under these circumstances, Mastro's letter adequately notified Kumakichi and its shareholders of the Newhall/Jones claims and Mastro's expectation that Kumakichi and the McCarthys defend such claims. Kumakichi breached the warranty to defend in refusing this tender of defense.

## Effect of Settlement

■ Although Kumakichi breached the covenants of the warranty deed when it refused Mastro's tender of defense, this breach must be the proximate cause of Mastro's damages in defending the Newhall/Jones adverse possession claim. *See Marsh v. Commonwealth Land Title Ins. Co.*, 57 Wn. App. 610, 622-24, 789 P.2d 792 (1990). The elements of proximate cause consist of "cause in fact and legal causation." *City of Seattle v. Blume*, 134 Wn.2d 243, 251, 947 P.2d 223 (1997) (citing *Hartley v. State*, 103 Wn.2d 768, 777, 698 P.2d 77 (1985)). Cause in fact indicates the direct connection between an act and an injury. *See Horn v. Moberg*, 68 Wn. App. 551, 557, 844 P.2d 452 (1993). To find legal causation, courts evaluate policy and common sense to determine how far one's responsibility for the consequences of his or her actions should extend. *See Blume*, 134 Wn.2d at 252 (citing *Hartley*, 103 Wn.2d at 779). Thus, even where cause in fact is proved, legal causation determines whether liability attaches as a matter of law. *See Horn*, 68 Wn. App. at 557.

■ Washington's courts have generally followed the independent business judgment rule. *See Marsh v. Commonwealth Land Title Ins. Co.*, 57 Wn. App. 610, 622-24, 789 P.2d 792 (1990); *see also King v. City of Seattle*, 84 Wn.2d 239, 250, 525 P.2d 228 (1974); *Horn*, 68 Wn. App. at 558. Under this rule:

[W]here there is a realistic possibility of correcting the wrong-

ful act complained of by pursuing available legal remedies, and the plaintiff by the voluntary exercise of independent business judgment elects not to pursue those available legal remedies, the defendant's wrongful act is not the proximate cause of plaintiff's damages.

*Marsh*, 57 Wn. App. at 619-20. But in *City of Seattle v. Blume*, 134 Wn.2d 243, 947 P.2d 223 (1997), our Supreme Court recently held the independent business judgment rule no longer bars a proximate cause element of a legal claim. Specifically troubling to the Court was that:

Every time a party settles a claim he or she is essentially making an independent business judgment which under the present rule would preclude any valid claim against a tortfeasor. Consequently, the rule promotes litigation and favors those with the means to do so.

*Id.*, 947 P.2d at 230.

Kumakichi argues that despite a finding that the Newhall/Jones encroachment constituted a breach of the covenants of the warranty deed, Mastro's settlement with Newhall/Jones does not bind it because this settlement was made without notice to Kumakichi and was merely an exercise of independent business judgment. But, in light of *Blume*, we find Kumakichi's approach impracticable. A boilerplate rule that a grantor need only defend once judgment is entered in favor of a grantee "discourages settlement, favors those who can afford lengthy litigation, and serves as a potential shield from liability for those who would otherwise be found liable for a legal wrong." *Id.*, 947 P.2d at 231. Indeed, such a position may well contravene a grantor's interest. Here, Kumakichi conceded at oral argument that had Mastro and Newhall/Jones litigated their dispute, establishing paramount title in Newhall/Jones, Kumakichi would be liable to Mastro. Arguably, then, since litigation costs may have exceeded Mastro's settlement costs, it is likely that the settlement benefited Kumakichi.

Even if we were to apply the "independent business judgment" rule as Kumakichi argues, Mastro would prevail

because *Marsh v. Commonwealth Land Title Ins. Co.*, 57 Wn. App. 610, 622-24, 789 P.2d 792 (1990), upon which Kumakichi relies, is distinguishable. The Marshes sued a title company for negligently recording a deed late. They claimed this negligence put them in a "vulnerable legal position," causing them to pay more in a subsequent claim with a third party than they otherwise would have. The court found that because all the circumstances indicated the Marshes likely would have prevailed in litigation, the additional settlement costs were merely the result of an independent business decision and not proximately caused by the title company. *Marsh*, 57 Wn. App. at 623-24. But unlike *Marsh*, the circumstances here indicate a strong probability that Mastro would not have prevailed if it continued its litigation with Newhall/Jones. In defending the Newhall/ Jones action, Mastro prevailed on summary judgment in the trial court. But this court reversed, remanding to the trial court to evaluate what interest a prior owner, the Matteses, conveyed to their successor owner. Mastro decided to settle with Newhall/Jones only after Mrs. Mattes's intent was clear. Under these circumstances, we find Mastro acted appropriately in settling with Newhall/ Jones.[3]

The remainder of this opinion has no precedential value. Therefore, it will not be published but has been filed for public record. *See* RCW 2.06.040; CAR 14.

AGID and BECKER, JJ., concur.

Reconsideration denied March 27, 1998.

Review denied at 136 Wn.2d 1015 (1998).

---

[3]Because we find Mastro properly settled with Newhall/Jones on other grounds, we need not reach Kumakichi's argument that it was deprived of an opportunity to litigate the validity of the Newhall/Jones claim in violation of CR 14.