925 P.2d 194 (1996)
130 Wash.2d 486
Joseph F. STILEY, III, Petitioner,
v.
Edward T. BLOCK, Respondent.
No. 63218-9.
Supreme Court of Washington, En Banc.
Argued March 6, 1996.
Decided October 24, 1996.
*196 Mark A. Johnson, Scott A. Samuelson, Attorneys at Law, Seattle, for petitioner Joseph Stiley.
Lukins & Annis, Terence R. Whitten, Erika Balazs, Spokane, for respondent Edward Block.
*195 SMITH, Justice.
Petitioner Joseph F. Stiley III seeks review of an unpublished opinion of the Court of Appeals, Division Three, which reversed a Spokane County Superior Court judgment upon a jury verdict upholding Petitioner Stiley's claims of fraud, legal malpractice and breach of contract against Respondent Edward T. Block. We granted review. We reverse in part and affirm in part.

QUESTIONS PRESENTED
The questions presented in this case are: (1) whether the trial court erred in instructing the jury on the duty Respondent Block owed to Petitioner Stiley; (2) whether the trial court erred in not instructing the jury on contributory negligence; (3) whether there was sufficient evidence to submit Petitioner Stiley's claim of fraud against Respondent Block to the jury; (4) whether the trial court erred in allowing Petitioner Stiley's attorney to impeach Respondent Block by examining him on the question whether, in violation of RCW 5.28.060, he committed perjury when he falsely notarized a deed of trust, and if so, whether that evidence unduly prejudiced the jury; (5) whether the portion of the jury verdict finding Respondent Block responsible for breach of contract was sufficient to support the judgment against him; and (6) whether the "voluntary exercise of independent business judgment" defense recognized in Marsh v. Commonwealth Land Title Ins. Co., 57 Wash.App. 610, 789 P.2d 792, review denied, 115 Wash.2d 1025, 802 P.2d 127 (1990) and other cases bars recovery by Petitioner Stiley.

STATEMENT OF FACTS
On July 6, 1988, Joseph F. Stiley III (Petitioner Stiley) brought an action in the Spokane County Superior Court against Edward T. Block (Respondent Block), claiming legal malpractice, fraud and breach of contract.[1] Patrick K. Stiley (Defendant Stiley) was later joined as a defendant, with Petitioner Stiley claiming legal malpractice against him. The jury trial began on July 12, 1993, with the Honorable Richard W. Miller presiding.
In 1983 or early 1984 Petitioner Stiley, who was then living in Virginia, asked his brother, Defendant Stiley, an attorney practicing in Spokane, Washington, to identify investment opportunities for him in that city.[2] In April 1984, Defendant Stiley telephoned his brother and told him of an investment opportunity in Westwood Hills, a property in Spokane. Westwood Hills was owned by Aaron "Butch" Stern, Dennis Cullinane, and Robert Webb through Webbco, Inc. (Webbco), a Washington corporation. They were the only shareholders and officers.[3] Webbco bought Westwood Hills from the Waldron family in 1978.[4] The property consisted *197 of one hundred lots.[5] Seven lots, lots 18 through 24 in block 1, were developed.[6] The remaining lots were undeveloped. In addition to owing real estate taxes and other assessments, Webbco had an underlying obligation on Westwood Hills of approximately $85,000.00 owed to the Waldrons. Webbco had agreed the Waldrons would foreclose on the property unless Webbco paid the amount owed by May 25, 1984.
Between April and May of 1984, Petitioner Stiley spoke several times by telephone and in person with the Webbco principals, discussing his potential investment through a loan of $100,000.00 for Westwood Hills. Mr. Webb and Mr. Cullinane testified the conversations indicated Petitioner Stiley's loan would be secured by only seven lots, lots 18 through 24, in Westwood Hills.[7] Petitioner Stiley testified he told them he would lend Webbco money only if the loan was secured by all the lots in Westwood Hills.[8]
Petitioner Stiley testified that included in the transaction between him and Webbco was the "agreement" that "Webbco would have an attorney draft all the ... necessary real estate related papers...."[9] Webbco retained its own attorney, Edward T. Block (Respondent Block), for this purpose. Respondent Block also acted as escrow agent. Petitioner Stiley, who still lived in Virginia at the time, asked Defendant Stiley to review documents relating to the transaction for him, even though Defendant Stiley cautioned his brother that he did not practice real estate law. Defendant Stiley agreed to review the documents, but also advised Petitioner Stiley he was not acting as his attorney in the matter.
Petitioner Stiley decided to invest $100,000 through a loan on Westwood Hills.[10] Respondent Block by letter dated May 22, 1984 sent Defendant Stiley the documents he drafted for the transaction[11]the loan agreement, promissory note, deed of trust and corporate resolution. Robert Webb had already signed all the documents, including the deed of trust dated May 23, 1984. The deed of trust put Petitioner Joseph F. Stiley III in a first lien position on all the lots in Westwood Hills, except Lots 18 through 24.[12] Sometime around May 22, 1984, Petitioner Stiley received a letter dated May 22, 1984[13] from Respondent Block with copies of the documents, including the deed of trust, and discussed the documents with his brother, Defendant Stiley, by telephone.
Petitioner Stiley, Mr. Stern and Mr. Webb all testified the agreement between Webbco and Petitioner Stiley provided that $15,000 of Petitioner Stiley's $100,000 would buy him a lot of his choice in Westwood Hills and he would receive 25 percent of the net profits realized when Webbco sold Westwood Hills.[14] The transaction also included a promissory note which recited that Petitioner Stiley's $85,000 loan would be interest free until June 1, 1985, when payment would become due in full; and, if Petitioner did not foreclose when *198 the loan was due, the loan would then bear interest at 15 percent per year.[15] The transaction between Webbco and Petitioner Stiley also included a deed of trust on the Westwood Hills property securing Petitioner Stiley's loan.[16]
On May 24, 1984, Petitioner Stiley transferred $100,000 by wire from his bank in Virginia to Defendant Patrick K. Stiley's trust account in Spokane. On May 25, 1984, Defendant Stiley sent his trust account check for $99,929.62 by letter to Respondent Edward T. Block.[17] The letter instructed Respondent Block to disburse the funds only after filing the documents placing Petitioner Stiley "in first position as secured creditor on the 92 parcels of real property [in Westwood Hills] and as second creditor on the other seven parcels."[18] Later that day, on May 24, 1984, Respondent Block sent Defendant Stiley a letter stating it was his "understanding" that "in consideration for [Petitioner Stiley's] loan to Webbco of $85,000 ... he is to receive a first mortgage against the real property ... [in Westwood Hills] and a second mortgage against the remaining seven lots."[19] The letter then stated "[u]pon clearing title, we will record [Petitioner Stiley's] Deed of Trust against the subject property, which will give him a first lien position against this property...."[20] The letter stated a "second mortgage against the remaining seven lots" was being prepared and would be signed by Robert Webb and Aaron Stern the following Tuesday.
Later, on May 25, 1984, both Mr. Webb and Mr. Stern went to Respondent Block's office to review and sign the documents. They and Respondent Block testified that Mr. Stern then telephoned Defendant Stiley about the transaction.[21] Mr. Stern testified that during the telephone conversation he talked to Defendant Stiley about the agreement, reminding him or confirming that Petitioner Stiley was to get a security interest only in Lots 18 through 24, and not in all the lots in Westwood Hills.[22] Respondent Block testified he then confirmed by telephone with Defendant Stiley the changes in the transaction, which then provided that Petitioner Stiley would have a first lien position on only Lots 18 through 24 and no security interest in the remaining lots of Westwood Hills.[23] Respondent Block testified Defendant Patrick K. Stiley agreed to this lessened security interest.[24] At trial, though, Defendant Stiley testified he never agreed to a lesser security interest on behalf of his brother, Petitioner Stiley.[25] He also stated he did not speak to anyone about changing his brother's security interest and did not have authority to negotiate any change in the agreement.[26] He acknowledged someone may have in his presence suggested a change, but he did not recall it.[27] No one disputes Petitioner Joseph F. Stiley's testimony that he never spoke with anyone about making any changes in the original agreement.[28]
At trial, the Webbco principals and Petitioner Stiley disputed what they originally "agreed" was Petitioner Stiley's security interest in Westwood Hills. Both Defendant Stiley and Petitioner Stiley testified Petitioner Stiley was to receive a deed of trust giving him a first lien position as secured creditor *199 on 92 lots, but not lots 18 through 24.[29] They testified the agreement, supported by letters between Defendant Stiley and Respondent Block, both dated May 25, 1984,[30] also included a second deed of trust giving Petitioner Stiley a second lien position as secured creditor on lots 18 through 24, the developed lots.[31]
Referring in part to conversations with Petitioner Stiley and Defendant Stiley, Mr. Stern, Mr. Webb and Mr. Cullinane testified they "understood" that under the agreement Petitioner Stiley was to receive one deed of trust giving him a first lien position as secured creditor on only seven lots, lots 18 through 24.[32] In support of this position, Mr. Webb read a letter he sent to Webbco's attorney, Respondent Block, about the middle of May 1984, which stated Petitioner Stiley would get a deed of trust on the "D" Street lots, or lots 18 through 24, under terms of the "agreement."[33] Mr. Webb also testified Lots 18 through 24 had been appraised at $135,000 to $140,000, enough to cover Petitioner Stiley's loan.[34] But Petitioner testified the Webbco principals told him they needed $100,000 and he agreed to lend the money only if it was secured by all the lots in Westwood Hills.[35]
Respondent Block testified that on May 25, 1984, after his telephone conversation with Defendant Stiley, his secretary at his direction replaced the first page of the deed of trust to show Petitioner Stiley's security interest in only lots 18 through 24, as opposed to the original document giving him a first lien position on 92 lots.[36] Mr. Stern then signed the "revised" deed of trust, which Mr. Webb had signed on May 23, 1984 before the change. On the deed of trust, Respondent Block, as notary public, certified that both Mr. Webb and Mr. Stern executed the document in his presence on May 23, 1984. Respondent Block then disbursed the funds received from Defendant Stiley, acting for Petitioner Stiley, to the Waldrons' attorney that day.
On May 31, 1984, Respondent Block recorded the "revised" deed of trust which gave Petitioner Stiley a first lien position on only lots 18 through 24.[37] Mr. Webb testified both he and Mr. Stern delivered a copy of the recorded deed of trust to Defendant Stiley's office the next day, June 1, 1984. Defendant Patrick K. Stiley and Petitioner Joseph F. Stiley III both testified they did not receive a copy of the recorded deed on that date and were not aware of substitution of the first page by Respondent Block at that time.
In early 1985, Petitioner Stiley learned that Webbco could not repay his $100,000 loan on time.[38] He decided not to foreclose, but instead invested more money in Westwood Hills.[39] On February 12, 1986, he *200 signed an agreement subordinating his interest in lots 18 through 24.[40] He testified he did not know then that he was subordinating his entire security interest, and if he had known it, he would not have signed the subordination agreement.[41]
Petitioner Stiley testified he learned for the first time between April and May 1987 that his security interest was only in lots 18 through 24 of Westwood Hills.[42] At that time Webbco was having financial difficulties with Westwood Hills. Petitioner testified he nevertheless continued to invest money in Westwood Hills in an effort to collect his loan and perhaps realize some profits.[43] Westwood Hills continued to experience financial problems. Petitioner Stiley ultimately lost the money he loaned and his investment.
During trial, the court allowed Petitioner Stiley's attorney to impeach Respondent Block by referring to RCW 5.28.060, in questioning him in the presence of the jury, to support an assertion that Respondent Block committed perjury when he falsely notarized the deed of trust.
After close of Petitioner Stiley's case, the trial court denied Respondent Block's motion for a directed verdict on Petitioner Stiley's claim of fraud against him.[44] The court instructed the jury on fraud in Instructions 16 and 17.[45] While there was some evidence to justify submitting the issue of fraud to the jury, the Court of Appeals correctly appraised the scarcity of evidence to support a conclusion of fraud under the "clear, cogent and convincing" evidence standard.
The trial court did not instruct the jury on contributory negligence by Petitioner Stiley as requested by Respondent Block's attorney and Defendant Stiley's attorney.[46] The court also refused to instruct the jury that Respondent Block was not Petitioner Stiley's attorney and that Defendant Stiley was Petitioner Stiley's attorney, as requested by Respondent Block's attorney.[47] Proper exceptions were taken by counsel.
In addition, the trial court did not allow evidence of subsequent advances Petitioner Stiley made to Webbco, after his $85,000 loan to the company, to be considered by the jury in determining damages.
The jury unanimously determined Defendant Patrick K. Stiley did not commit legal malpractice.[48] It unanimously determined Respondent Edward T. Block committed fraud, legal malpractice and breach of contract.[49] On September 7, 1993, the court entered judgment for $168,292.55 (jury award of $85,000, prejudgment interest of $83,053.15 and attorney fees and costs of $239.40) against Respondent Block.[50]
On July 18, 1995, the Court of Appeals, Division Three, in an unpublished opinion, reversed the Superior Court and remanded for retrial.[51] This Court granted review on December 5, 1995.

JURY INSTRUCTIONS
Whether to give a particular instruction to the jury is a matter within the discretion of the trial court.[52] Thus a trial court's refusal to give a requested instruction is reviewed only for abuse of discretion.[53] A *201 trial court is required to instruct the jury on a theory only where there is substantial evidence to support it.[54]
Trial court error on jury instructions is not a ground for reversal unless it is prejudicial.[55] An error is prejudicial if it affects the outcome of the trial.[56]

Duty of Care
Petitioner Stiley argues the Court of Appeals erred in concluding the trial court instructed the jury that Respondent Block was Petitioner Stiley's attorney.[57] The Court of Appeals reasoned the trial court should have let the jury decide whether Respondent Block was Petitioner Stiley's attorney because it was disputed at trial.[58]
The trial court instructed the jury on Respondent Block's duty to Petitioner Stiley in Instructions 10, 20 and 22:
Instruction 10
A fiduciary duty from one person to another means that the fiduciary owes the highest duty of fidelity and good faith to the other person.
This court has found, as a matter of law, that defendant Edward Block had a fiduciary duty to plaintiff Joseph Stiley. This court has also found that defendant Patrick Stiley had a fiduciary duty to the plaintiff, Joseph Stiley.
Instruction 20
I have found as a matter of law that both Edward Block and Patrick Stiley owed to Joseph Stiley the duty to exercise that degree of skill, care and learning expected of a reasonably prudent attorney in the State of Washington in the same or similar circumstances at the time of the transaction in question. Failure to exercise such skill, care and learning is negligence.
Instruction 22
I have found as a matter of law that the May 25, 1984 letter from Patrick Stiley to Edward Block which contained the check constituted escrow, or closing, instructions and, for purposes of this transaction, Edward Block was the escrow, or closing, agent.[[59]]
Contrary to the opinion of the Court of Appeals, the trial court did not instruct the jury that Respondent Block was Petitioner Stiley's attorney. But the court did instruct the jury that Respondent Block had a fiduciary duty to Petitioner Stiley and that he was the escrow agent in this case. The court correctly instructed the jury that Respondent Block, as an attorney escrow agent, owed Petitioner Stiley "the duty to exercise that degree of skill, care and learning excepted [sic] of a reasonably prudent attorney in the State of Washington...."[60]
Respondent Block asserts the trial court incorrectly instructed the jury on his duty and he was thus unable to effectively argue that Petitioner Stiley should have relied more upon his own attorney for protection. Among Respondent Block's proposed instructions the court refused to give were instructions that an attorney-client relationship existed between Defendant Stiley and Petitioner Stiley; that no attorney-client relationship existed between Respondent Block and Petitioner Stiley; and that a person's primary protection in commercial transactions *202 comes from the person's own attorney, and not from the escrow agent or the other party's attorney.[61] Respondent Block relied on Hurlbert v. Gordon[62] to support this argument at trial and in his brief to the Court of Appeals.
Hurlbert involved the sale of real property, where both the buyer and seller were undisputedly represented by attorneys. The buyer's attorney acted as escrow agent. The buyer's attorney made a change to the security agreement form which both parties had agreed to use. The seller's attorney reviewed the written change and approved it. At trial, the sellers successfully argued that, as escrow agent, the buyer's attorney should have disclosed to them at closing the change in the security agreement. But the Court of Appeals concluded that, as escrow agent, the buyer's attorney was not required to discuss each of the changes "paragraph by paragraph" at closing.[63] The Court stated that "[a] party's primary protection in a commercial transaction comes from its own attorney, not the attorney for the other party or the escrow agent."[64]
In Hurlbert, unlike the facts in this case, it was undisputed that each party to the transaction was independently represented by an attorney. In this case, it was disputed whether Defendant Stiley was represented by his brother, Petitioner Stiley, as an attorney in the transaction. Petitioner Stiley testified he believed Defendant Stiley was his attorney.[65] Defendant Stiley testified he agreed to review the documents for the transaction for his brother, but specifically advised his brother he was not his attorney and he was not an expert in real estate law. Determining whether an attorney-client relationship exists involves questions of fact.[66] "This court has long recognized that it is the function and province of the jury to weigh the evidence and determine the credibility of the witnesses and decide disputed questions of fact."[67] The trial court was correct in not instructing the jury that an attorney-client relationship in fact existed between Defendant Patrick K. Stiley and his brother, Petitioner Joseph F. Stiley III, but left it as a question of fact to be determined by the jury.
It is at least debatable whether the court erred in not instructing the jury "[a] party's primary protection in a commercial transaction comes from its own attorney, not the attorney for the other party or the escrow agent," as announced in Hurlbert. However, the court did instruct the jury Defendant Stiley owed Petitioner Stiley a fiduciary duty[68] and "the duty to exercise that degree of skill, care and learning expected of a reasonably prudent attorney" in the same or similar circumstances.[69] Because of the dispute whether Defendant Stiley was actually Petitioner Stiley's attorney, any error in not giving the instruction was harmless. The trial court correctly instructed the jury on Respondent Block's affirmative duties to Petitioner Stiley. Any error by the trial court in not specifically instructing the jury that no attorney-client relationship existed between Respondent Block and Petitioner Stiley was also harmless.

Contributory Negligence
Petitioner Stiley asserts the trial court properly refused to instruct the jury on his contributory negligence because there *203 was no substantial evidence to support it.[70] But Respondent Block argues the Court of Appeals properly concluded the trial court should have instructed the jury on contributory negligence because evidence showed Petitioner Stiley did not obtain final documents on his loan to Webbco and did not request them to confirm his interest.[71]
Petitioner Stiley testified that sometime around May 22, 1984 he received copies of a deed of trust and other documents from Webbco which showed his loan would be secured by all the lots in Westwood Hills except lots 18 through 24. He testified that after reviewing the documents and speaking to Defendant Stiley he then decided to lend $100,000 to Webbco. Mr. Webb, Mr. Stern and Respondent Block all testified the first page of the deed of trust was changed on May 25, 1984 to reduce Petitioner Stiley's security interest from 92 lots in Westwood Hills to seven lots. It is undisputed that Petitioner Stiley was not notified of those changes on May 25, 1984.
Respondent Block argues Petitioner Stiley could have independently obtained the recorded deed of trust specifying his security interest. Respondent's argument would be relevant if the damages awarded by the jury here included the money Petitioner lent to Webbco after the deed of trust was recorded. But the jury did not consider that money as part of the damages because the court did not allow evidence on it. Contributory negligence is thus not relevant.
In this case, the trial court refused to instruct the jury on contributory negligence because it reasoned there were two attorneys, Respondent Block and Defendant Stiley, who each independently owed duties to Petitioner.[72] The Court of Appeals concluded the trial court should have instructed the jury on contributory negligence because Hansen v. Wightman[73] acknowledges a client may be contributorily negligent in a legal malpractice case; and thus the fact that a party has been represented by an attorney does not preclude a finding that the person was contributorily negligent as a matter of law. Even assuming that to be true, the Court of Appeals cites no evidence in the record to support a conclusion that Petitioner Stiley was contributorily negligent.
The Court of Appeals was in error in concluding the trial court should have submitted an instruction on contributory negligence by Petitioner Stiley.

FRAUD
Petitioner Stiley contends the trial court correctly denied Respondent Block's motion for directed verdict on the claim of fraud against Respondent Block because there was substantial evidence of fraud.[74] Respondent Block asserts the issue of fraud should not have gone to the jury because there was no evidence of any misrepresentation which would support a claim of fraud.[75]
This Court reviews a trial court's decision to deny a motion for directed verdict under the same standard as the trial court.[76] In a motion for a directed verdict the court must accept as true the nonmoving party's evidence and all favorable inferences arising from it.[77] In addition,
[t]he inquiry on appeal is limited to whether the evidence presented was sufficient to sustain the jury's verdict. Denial of a motion for directed verdict ... is inappropriate only when it is clear that the evidence and reasonable inferences are insufficient to support the jury's verdict.[78]
*204 Each element of fraud must be established by "clear, cogent and convincing evidence."[79] The nine elements of fraud are: (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff.[80] The Court of Appeals correctly concluded that, in reviewing the trial court's denial of the motion for directed verdict, the question is "whether, viewing all the evidence in a light most favorable to [Petitioner Stiley], a reasonable jury could find clear, cogent and convincing proof of the misrepresentation" and that the evidence did not rise to that standard.[81]
Petitioner Stiley asserts that Respondent Block's letter of May 25, 1984 to Defendant Patrick K. Stiley constituted misrepresentation in this case.[82] In that letter, Respondent Block stated his understanding that "[Petitioner Stiley] is to receive a first mortgage against real property [in Westwood Hills] and a second mortgage against the remaining seven lots." The letter also stated "[u]pon clearing title, we will record [Petitioner Stiley's] Deed of Trust ... which will give him a first lien position against this property...." The Court of Appeals correctly recognized that Respondent Block's letter contained a promise of future performance, and not a representation of existing fact.[83]
Respondent Block, as a fiduciary, had a duty to disclose the reduced security interest to Petitioner Stiley and Defendant Stiley, who testified they were not told about it.[84] There was evidence of misrepresentation, but not of a material existing fact. The Court of Appeals correctly concluded there was not "clear, cogent and convincing evidence" of fraud committed by Respondent Block.

FALSE CERTIFICATE OF ACKNOWLEDGMENT AND RCW 5.28.060
Petitioner argues the trial court properly permitted examination eliciting testimony that Respondent Block made a false certification on a deed of trust and that it constituted perjury under RCW 5.28.060.[85] But Respondent contends the Court of Appeals correctly decided that the implication that the false certification constituted perjury was unduly prejudicial, thus tainting the whole verdict, because credibility played a key role in this case.[86]
Under RCW 5.28.050, persons may make affirmations if they have "conscientious scruples against taking an oath ... by assenting, when addressed, in the following manner: `You do solemnly affirm that,'...." The affirmation addressed in RCW 5.28.050 refers to an alternative to an oath (swearing) and not to the signature of a notary public who witnesses a signature on the acknowledgment of a deed.
In this state, deeds must be acknowledged before persons authorized to take acknowledgments,[87] which includes notaries.[88] A notary public, by certificate of acknowledgment, certifies the person is known to the notary as the one who signed the instrument in the presence of the notary on the date *205 stated, and that the person signed freely and voluntarily.[89] A notary public certifies the acknowledgment by signature and official seal.[90] The statutes relating to acknowledgments, RCW 64.08, make no reference to oaths or affirmations by officers, including notaries public, who take acknowledgments.
In this case, Respondent Block testified Mr. Webb signed the deed of trust giving Petitioner Stiley a security interest in 92 lots on or about May 23, 1984. Mr. Stern testified he signed that same deed of trust on May 25, 1984 after changes were made giving Petitioner Stiley a security interest in only seven lots. On that date, May 25, 1984, Respondent Block then certified the acknowledgment on the deed of trust, stating that Mr. Stern and Mr. Webb both appeared and signed the document two days earlier on May 23, 1984. The certificate on the deed also indicated that Respondent Block himself signed and sealed it on May 23, 1984, and not on the actual date of May 25, 1984.
At the time Respondent Block notarized the deed, the statutes governing notaries public, former RCW 42.28.010 et seq., established no specific standards of conduct for notaries to follow in taking acknowledgments.[91] Former RCW 42.28.040(2) gave notaries power "to take acknowledgments of all deeds and other instruments of writing, and certify the same in the manner required by law." But no provision in the former statutes made notaries liable for misconduct in their official capacity. From the evidence it arguably can be concluded that Respondent Block falsely certified[92] the deed of trust, but that does not constitute the crime of perjury, which is a felony.[93]
The legislature in 1985 amended statutes governing notaries public and enacted RCW 42.44.160(1) which provides that "a notary public commits official misconduct when [the notary] signs a certificate evidencing a notarial act, knowing the contents of the certificate are false."[94] Official misconduct is a gross misdemeanor.[95] This statute did not exist at the time of the transactions in this case. There was thus no basis for concluding even notarial misconductmuch less perjuryby Respondent Block.
The Court of Appeals correctly concluded the trial court erred in allowing Petitioner Stiley's attorney to impeach Respondent Block by direct reference to RCW 5.28.060 in examination of Mr. Block in the presence of the jury. The next question must be whether the error was unduly prejudicial, as concluded by the Court of Appeals.
An error is unduly prejudicial if it affects or presumptively affects the outcome of the trial.[96] The transcript of the erroneously admitted examination of Mr. Block consists of only eight pages.[97] The transcript of the entire trial consists of 1597 pages in six volumes.[98] Respondents thus argue that testimony before a jury which may have lasted fives minutes at most presumptively affected the outcome of this lengthy and complex trial. While we agree credibility was an important issue, the eight page transcript of the erroneously admitted testimony does not demonstrate that the attempt by Petitioner Stiley to discredit Respondent *206 Block was successful. Respondent Block held his own during this examination. The trial court ultimately sustained objections by Respondent Block's attorney to the perjury line of questioning, negating any prejudicial effect which might have resulted from the erroneously admitted testimony. Counsel for Respondent Block apparently did not consider this testimony significant because he did not move for a mistrial upon its conclusion.
We agree with the Court of Appeals that the trial court erred in allowing counsel for Petitioner Stiley to cross-examine Respondent Block using RCW 5.28.060 to imply that Respondent Block committed perjury. However, we do not agree that this error was so prejudicial it requires a new trial, especially in light of our conclusion on the breach of contract issue.

BREACH OF CONTRACT
Petitioner Stiley contends the portion of the jury verdict determining Respondent Block was liable under the breach of contract claim was of itself sufficient to support the judgment against him. He asserts the jury unanimously agreed Respondent Block, as escrow agent, did not follow the escrow instructions and thus breached his contractual duties to Petitioner Stiley.[99]
Respondent Block did not raise the breach of contract issue before the Court of Appeals. But he contends here that the prejudicial effect of RCW 5.28.060, implying he committed perjury, tainted all claims, including the breach of contract claim.[100]
The Court of Appeals briefly acknowledged the issue in its opinion, but did not discuss it.
Upon our review of the record, including the court's instructions to the jury, we are satisfied the jury could have reached its conclusion solely upon the breach of contract issue. Although the jury by special interrogatory found that Defendant Block was negligent, that the negligence was a proximate cause of Petitioner's damages, and that Petitioner, in the exercise of reasonable diligence, first discovered he did not have a first deed of trust on the 92 lots in Westwood Hills development in April 1987,[101] the jury also found that Respondent Block breached a contract "as represented by the May 25, 1984, escrow instructions letter from Patrick Stiley to Edward Block,"[102] and that the breach of contract was a proximate cause of damages to petitioner[103] in the amount of $85,000.00.[104]
The jury also found in the special interrogatory that Respondent Block committed fraud and the fraud was a proximate cause of damage to Petitioner Stiley. But the record does not satisfy the "clear, cogent and convincing" test for fraud. There was misrepresentation, but not of a material existing fact. That finding, though, does not affect the finding on breach of contract.
We conclude that the damages found by the jury$85,000.00, the exact amount lent to Webbco by Petitioner Stiley to be secured by a deed of trust on the 92 lots in Westwood Hillscan be sustained upon the jury's conclusion of breach of contract and that that finding is not dependent upon a finding of fraud.

INDEPENDENT BUSINESS JUDGMENT DEFENSE
Respondent Block argues that Petitioner Stiley's claim should have been dismissed under a line of cases which includes Marsh v. Commonwealth Land Title Ins. Co.,[105]King v. City of Seattle[106] and Horn v. Moberg.[107] He asserts that because Petitioner decided not to pursue his available legal remedies, that is, foreclosing on his loan or *207 suing Webbco as the primarily liable party, his damages were caused by his "voluntary exercise of independent business judgment," and not by Respondent Block's conduct. The Court of Appeals reasoned that Petitioner's decision not to foreclose on his loan did not preclude a finding that Respondent Block was the proximate cause of Petitioner's loss.[108] Respondent Block claims the Court of Appeals decision conflicts with Marsh and the other cases cited.
In Marsh, the Marshes sued a title company for negligence in recording a deed late. They claimed the title company's negligence put them in a vulnerable legal position, causing them to pay more in a subsequent claim than they otherwise would have been required to pay. But the court stated that
[W]here there is a realistic possibility of correcting the wrongful act complained of by pursuing available legal remedies, and the plaintiff by the voluntary exercise of independent business judgment elects not to pursue those available legal remedies, the defendant's wrongful act is not the proximate cause of plaintiff's damages.[109]
The court concluded that, although the title company's actions put the Marshes in a "vulnerable legal position," that did "not meet the requirement of proof of proximate cause between the alleged negligence and the claimed damages."[110] The "voluntary exercise of independent business judgment" defense was recognized earlier in the 1974 case of King v. Seattle,[111] which the Court cited at length in Marsh.
In King, a couple (the Kings) applied for a building permit and a street use permit from the City of Seattle to construct a building over water. The city initially denied the permits, but the Kings obtained them in a mandamus action. Construction on the building was further hampered by a federal regulation requiring another permit which went into effect after the Kings initiated the mandamus action against the city. Instead of applying for that permit, the Kings abandoned their construction project. They quitclaimed their interest in the property back to the seller. They then sued the city for intentionally interfering with their business expectancy. In its opinion, this Court observed that proximate cause is not solely determined by cause in fact. The Court concluded the city was the cause in fact of their damages, but that was not a proximate cause of the Kings' damages. No legal causation was shown because the Kings did not exhaust their federal administrative remedies before suing the city.
The later case of Horn v. Moberg[112] is more relevant here because it is a legal malpractice action in which an attorney raised the independent business judgment defense. In that case, the Horns sued their former attorney, Gerald J. Moberg, claiming he was negligent in preparing their products liability case. Mr. Moberg represented them in their case, but withdrew several months after the suit was filed, advising them to retain another attorney. After Mr. Moberg withdrew, the Horns chose to dismiss their claim against a defendant, the Maytag Company. They then sued Mr. Moberg for negligence in preparing their case. They claimed their decision to dismiss Maytag was not voluntary, but resulted from the stress created by Mr. Moberg's negligence. A jury found in favor of the Horns. The Court of Appeals reversed, stating that "[t]he Horns' decision to dismiss the claim against Maytag was clearly an exercise of business judgment."[113] The Court relied principally upon King and Marsh for its decision. It reasoned that Mr. Moberg was, at most, a cause in fact of the Horns' loss; but found no element of legal causation to conclude he was a proximate cause of their damages.
This case is distinguishable from Marsh, King, and Moberg. In this case, Petitioner Stiley lent Webbco $85,000.00. He testified *208 he believed his loan was secured by a deed of trust giving him a first lien position on ninety-two lots and a deed of trust giving him a second lien position on seven lots. This belief was supported by a letter and deed of trust provided by Respondent Block. Petitioner decided not to foreclose when the Webbco loan became due on June 1, 1985. But the agreement between Petitioner Stiley and Webbco gave him the option not to foreclose on that date. The promissory note stated that if Petitioner Stiley did not foreclose on June 1, 1985, his loan would begin bearing annual interest at 15 percent. Respondent Block did not record the original deed of trust giving Petitioner Stiley a first lien position on ninety two lots in Westwood Hills. Petitioner Stiley would not have had an interest in the ninety-two lots if he had foreclosed at any time because the document actually recorded was the "revised" one giving him a security interest in only seven lots. Unlike the title company in Marsh, Respondent Block did not simply place Petitioner Stiley in a "vulnerable legal position." Petitioner Stiley did not "create legal liability" in Respondent Block. That liability was created by Respondent Block himself.
The Court of Appeals correctly concluded that Petitioner Stiley's decision not to foreclose does not preclude a finding that Respondent Block's act was a proximate cause of Petitioner Stiley's loss. The independent business judgment defense is not applicable under the facts of this case. This conclusion does not controvert the policy announced in King, Marsh and Moberg.

CONCLUSION
(1) We reverse the Court of Appeals on its conclusions that the trial court erroneously instructed the jury on the duty Respondent Block owed to Petitioner Joseph F. Stiley III and that the trial court should have instructed the jury on contributory negligence.
(2) We affirm the Court of Appeals on its conclusion there was not sufficient evidence of fraud.
(3) We affirm the Court of Appeals on its conclusion that the trial court erroneously admitted evidence implying Respondent Block committed perjury in notarizing the document for the purpose of impeaching his testimony. However, we reverse the Court of Appeals on its conclusion that admission of this evidence was unduly prejudicial.
(4) We reverse the Court of Appeals on its conclusion on the jury verdict and reinstate the jury verdict awarding Petitioner Patrick K. Stiley damages of $85,000.00 against Respondent Edward T. Block. With prejudgment interest of $83,053.15 and attorney fees and costs of $239.40, Petitioner is entitled to a total judgment of $168,292.55.
DOLLIVER, MADSEN, ALEXANDER and SANDERS, JJ., concur.
TALMADGE, Justice (concurring).
I agree with the majority except for its discussion of fraud. The majority leaves the incorrect impression fraud can be proved only by an affirmative statement misrepresenting existing fact. Yet when a person is under a duty to speak, the failure to disclose material facts within that person's knowledge also constitutes a fraudulent misrepresentation.
The Court of Appeals held there was no evidence from which a jury could find by clear, cogent and convincing proof Edward Block made a misrepresentation to Joseph Stiley. The Court of Appeals appropriately cited Sigman v. Stevens-Norton, Inc., 70 Wash.2d 915, 425 P.2d 891 (1967), for the nine elements of fraud, and Sprague v. Sumitomo Forestry Co., 104 Wash.2d 751, 709 P.2d 1200 (1985), for the burden of proof in an action for fraudulent misrepresentation. However, the Court of Appeals' discussion of the issue of fraudulent misrepresentation suggests fraud requires an affirmative statement misrepresenting an existing fact. Op. at 8-9. The majority continues this mistaken belief in its discussion of the fraud issue. Majority op. at 203-04. The majority asserts there was a misrepresentation by Block in his May 25, 1984 letter to Patrick Stiley, but the misrepresentation was not of a material existing fact. Majority op. at 204.
Numerous Washington cases, however, indicate when a person is under a duty to speak and a person fails to disclose material *209 facts within that person's knowledge, such failure to disclose also constitutes fraudulent misrepresentation. Oates v. Taylor, 31 Wash.2d 898, 199 P.2d 924 (1948); Boonstra v. Stevens-Norton, Inc., 64 Wash.2d 621, 393 P.2d 287 (1964). As we said in Oates at 902-03, 199 P.2d 924 quoting 37 C.J.S. Fraud, § 16a, at 244[-45] (1943):
It is well settled that the suppression of a material fact which a party is bound in good faith to disclose is equivalent to a false representation. Where the law imposes a duty on one party to disclose all material facts known to him and not known to the other, silence or concealment in violation of this duty with intent to deceive will amount to fraud as being a deliberate suppression of the truth and equivalent to the assertion of a falsehood. The concealment of the fact which one is bound to disclose is an indirect representation that such fact does not exist, and constitutes fraud.
As the escrow agent for the Westwood Hills transaction, Block had responsibility for drafting, executing, and recording the deed of trust on the lots at issue in this case. Under Hurlbert v. Gordon, 64 Wash.App. 386, 824 P.2d 1238, review denied, 119 Wash.2d 1015, 833 P.2d 1389 (1992), Block plainly had a duty to inform Joseph Stiley about any material change in the terms of the deed of trust. Both Stiley brothers testified Block never informed them he had changed the legal description of the property subject to the deed of trust. Moreover, they testified he did not inform them he had, in effect, substantially diminished the security for Joseph Stiley's investment in Westwood Hills. In addition to this direct evidence, there were written escrow instructions governing Block's conduct as the escrow agent for this transaction. He varied the terms of the original written escrow agreement. Thus, there should have been some writing by Block to Stiley confirming the change in the written escrow instructions. In the absence of such a confirming letter or other writing, the Stiley brothers' description of the facts gains greater credence.
Although Block disputes the Stiley brothers' testimony, an issue of fact remained for the jury. The trial court was correct in denying the motion for directed verdict and the Court of Appeals erred in reversing the trial court's decision. The majority's opinion compounds the Court of Appeals' error by failing to recognize fraud can be proved both by affirmative statements misrepresenting existing fact as well as by the deliberate failure to disclose material facts within a person's knowledge. For the foregoing reasons, I concur in all portions of the majority's opinion with the exception of its discussion of fraud.
DURHAM, C.J., and JOHNSON and GUY, JJ., concur.
NOTES
[1] Clerk's Papers at 3.
[2] Verbatim Report of Proceedings at 598.
[3] Webbco was formed for the specific purpose of buying Westwood Hills. Id. at 390.
[4] Id. at 930-31. About one year after buying Westwood Hills, Webbco sold it to Ranfurly Limited, a Canadian entity. Ranfurly Limited became delinquent on its payments to the Waldrons and Webbco foreclosed and obtained Westwood Hills again in 1983.
[5] One of the 100 lots was tied up in a dispute between Webbco and Ranfurly Limited. (See id. at 930, 999-1000.) Thus, this case involves only 99 of the 100 lots in Westwood Hills. (Id.)
[6] Adjacent to "D" Street, these lots were sometimes referred to as the "D" Street lots.
[7] See Verbatim Report of Proceedings at 394-96, 928-32.
[8] Id. at 602.
[9] See, e.g., id. at 560.
[10] Petitioner Stiley testified he decided to invest in Westwood Hills only after receiving copies of documents for the transaction from Respondent Block on or about May 21 or 22, 1984, indicating he would have a first lien position on all of Westwood Hills, excluding lots 18 through 24, and a second lien position on lots 18 through 24. (See id. at 609.) Mr. Stern (one of the Webbco principals) negotiated the terms of the transaction between Webbco and Petitioner Stiley. (Id. at 939.) Testimony by Mr. Stern and Mr. Webb indicates that Petitioner Stiley had orally agreed, after conversations with Mr. Stern, to invest in Westwood Hills and take a security interest in only lots 18 through 24. (Id. at 936-39, 1209-11.)
[11] Verbatim Report of Proceedings at 432-34, 445; Ex. P2.
[12] Ex. P6.
[13] Ex. P3
[14] This is apparently consistent with a loan agreement which is not in the record before this court.
[15] Ex. P4.
[16] See Ex. P6 and Ex. P19.
[17] Ex. P11.
[18] Id. Although Westwood Hills consisted of 100 lots, one of the lots was in dispute at the time of the transaction. The case thus involves only 99 of the 100 lots.
[19] Ex. P9.
[20] Id.
[21] Verbatim Report of Proceedings at 438, 443, 921, 1213.
[22] Id. at 1213.
[23] Id. at 490.
[24] Id. at 438, 443.
[25] Id. at 139, 160.
[26] Verbatim Report of Proceedings at 160.
[27] Id.
[28] Id. at 562.
[29] Id. at 155, 558-59.
[30] Ex. P9 and Ex. P11.
[31] Verbatim Report of Proceedings at 155, 558-59, 606-09. In the early 1980s, Charles "Chuck" Sivers lent $40,000 to Webbco. He received a deed of trust giving him a first lien position as secured creditor on lots 18 through 24, and thus Petitioner Stiley could take only a second lien position on those seven lots.
[32] Id. at 395-96, 403, 410, 922, 938-41, 1209-13. Both Mr. Stern and Respondent Block testified that Mr. Sivers agreed to subordinate his security interest in lots 18 through 24 in order that Petitioner Stiley would have a first lien position on lots 18 through 24. (Id. at 450, 1212, 1216.)
[33] Verbatim Report of Proceedings at 936. At trial, the letter was admitted into evidence as Ex. 64B. It is not part of the record on review.
[34] Id. at 935. The Webbco principals did not specify the time and place of these conversations.
[35] Id. at 602-03.
[36] See id. at 472, 477.
[37] Ex. P19. At the time of the transaction, Mr. Sivers still had a first lien position as secured creditor on lots 18 through 24. Although both Mr. Stern and Respondent Block testified Mr. Sivers had agreed to subordinate his interest in lots 18 through 24 to Petitioner Stiley, Mr. Sivers did not sign a subordination agreement. (See Verbatim Report of Proceedings at 452-54, 1001.) Thus, Petitioner Stiley actually took only a second lien position behind Mr. Sivers when Respondent Block filed the deed of trust on May 31, 1984.
[38] Verbatim Report of Proceedings at 563.
[39] Id. at 563, 566-71.
[40] Ex. P20; Verbatim Report of Proceedings at 622.
[41] Verbatim Report of Proceedings at 564.
[42] Id. at 564-65.
[43] Id. at 813-16, 840, 842.
[44] Verbatim Report of Proceedings at 917.
[45] Clerk's Papers at 154-55.
[46] Verbatim Report of Proceedings at 1492, 1506, 1514-15.
[47] Id. at 1496, 1500, 1505-06.
[48] Id. at 1590-92; Clerk's Papers at 165.
[49] Id. Clerk's Papers at 165-67, "Special Verdict Form."
[50] Clerk's Papers at 129.
[51] Joseph Stiley v. Edward Block, No. 13555-1-III (Unpublished opinion July 18, 1995, noted at 78 Wash.App. 1050.)
[52] Seattle Western Indust., Inc. v. David A. Mowat Co., 110 Wash.2d 1, 750 P.2d 245 (1988).
[53] See generally Thomas v. Wilfac, Inc., 65 Wash. App. 255, 264, 828 P.2d 597, review denied, 119 Wash.2d 1020, 838 P.2d 692 (1992).
[54] Savage v. State, 127 Wash.2d 434, 448, 899 P.2d 1270 (1995).
[55] Brown v. Spokane County Fire Protection Dist. No. 1, 100 Wash.2d 188, 196, 668 P.2d 571 (1983).
[56] Id.
[57] Pet. for Review at 12-13.
[58] Joseph Stiley v. Edward Block, No. 1355-1-III, slip op. at 11 (Wn.App. July 18, 1995).
[59] Verbatim Report of Proceedings at 1524, 1527-28.
[60] Verbatim Report of Proceedings at 1528 (Instruction 20). See Bowers v. Transamerica Title Ins. Co., 100 Wash.2d 581, 588, 675 P.2d 193 (1983), which declares the duty of an attorney escrow agent:

"In addition to the duty to follow escrow instructions... an attorney escrow agent must also meet the standards of the legal profession, including those standards set forth in the Code of Professional Responsibility."
[61] Verbatim Report of Proceedings at 1504-07.
[62] 64 Wash.App. 386, 824 P.2d 1238, review denied, 119 Wash.2d 1015, 833 P.2d 1389 (1992).
[63] Id. at 395, 824 P.2d 1238.
[64] Id. at 399, 824 P.2d 1238.
[65] The trial court distinguished Hurlbert from this case by concluding there was no transfer of the changed or revised deed of trust from Respondent Block to Defendant Stiley. But the Court of Appeals correctly points out the Hurlbert decision rested on the fact that the change in the document there was adequately disclosed to the sellers' attorney, and not that a written disclosure of the change to the sellers' attorney was necessary.
[66] Bohn v. Cody, 119 Wash.2d 357, 832 P.2d 71 (1992).
[67] State v. Dietrich, 75 Wash.2d 676, 677-78, 453 P.2d 654 (1969).
[68] Verbatim Report of Proceedings at 1524 (Instruction 10).
[69] Id. at 1528 (Instruction 20).
[70] Pet. for Discretionary Review at 17.
[71] Resp. to Pet. for Discretionary Review at 9.
[72] Verbatim Report of Proceedings at 1492.
[73] 14 Wash.App. 78, 86, 538 P.2d 1238 (1975).
[74] Pet. for Discretionary Review at 14.
[75] Resp. to Pet. for Discretionary Review at 8.
[76] Hizey v. Carpenter, 119 Wash.2d 251, 271, 830 P.2d 646 (1992).
[77] Saunders v. Lloyd's of London, 113 Wash.2d 330, 335, 779 P.2d 249 (1989).
[78] Hizey, 119 Wash.2d at 272, 830 P.2d 646, citing Industrial Indem. Co. of the Northwest, Inc. v. Kallevig, 114 Wash.2d 907, 916, 792 P.2d 520, 7 A.L.R. 5th 1014 (1990) (quoting Hojem v. Kelly, 93 Wash.2d 143, 145, 606 P.2d 275 (1980)).
[79] Sigman v. Stevens-Norton, Inc., 70 Wash.2d 915, 920, 425 P.2d 891 (1967).
[80] Hoffer v. State, 110 Wash.2d 415, 425, 755 P.2d 781, adhered to on reconsideration, 113 Wash.2d 148, 776 P.2d 963 (1989).
[81] Stiley v. Block, No. 13555-1-III, slip op. at 8 (Wash.App. July 18, 1995).
[82] Ex. P9.
[83] See Shook v. Scott, 56 Wash.2d 351, 355-56, 353 P.2d 431 (1960).
[84] See Oates v. Taylor, 31 Wash.2d 898, 903, 199 P.2d 924 (1948); Favors v. Matzke, 53 Wash.App. 789, 796, 770 P.2d 686, review denied, 113 Wash.2d 1033, 784 P.2d 531 (1989).
[85] Pet. for Discretionary Review at 19.
[86] Resp. to Pet. for Discretionary Review at 11.
[87] RCW 64.04.020 provides in relevant part:

"Every deed shall be in writing, signed by the party bound thereby, and acknowledged by the party before some person authorized by this act to take acknowledgments of deeds."
[88] RCW 64.08.010.
[89] RCW 64.08.050.
[90] Id.
[91] Meyers v. Meyers, 81 Wash.2d 533, 503 P.2d 59 59 A.L.R.3d 1318 (1972). See former RCW 42.28.010 et seq. (repealed Wash.Laws of 1985, Ch. 156, § 26).
[92] Under RCW 9A.60.050(1) a false certification occurs when "an officer authorized to take a proof or acknowledgment of an instrument ... knowingly certifies falsely that the execution of such instrument was acknowledged by any party thereto...." False certification is a gross misdemeanor under RCW 9A.60.050(2). Assuming Respondent Block made a false certification on the deed of trust, it is at least subject to debate whether it constitutes perjury as defined in RCW 9A.72.
[93] See RCW 9A.72.020 (perjury in the first degree) and RCW 9A.72.030 (perjury in the second degree).
[94] RCW 42.44.160(1).
[95] RCW 42.44.160(2).
[96] State v. Edwards, 93 Wash.2d 162, 167, 606 P.2d 1224 (1980).
[97] Verbatim Report of Proceedings at 541-49.
[98] Id., Vols I-VI
[99] Pet. for Discretionary Review at 18.
[100] Resp. to Pet. for Discretionary Review at 12.
[101] Clerk's papers, 165-66.
[102] Id.
[103] Id. at 166.
[104] Id.
[105] 57 Wash.App. 610, 789 P.2d 792, review denied, 115 Wash.2d 1025, 802 P.2d 127 (1990).
[106] 84 Wash.2d 239, 525 P.2d 228 (1974).
[107] 68 Wash.App. 551, 844 P.2d 452, review denied, 121 Wash.2d 1025, 854 P.2d 1085 (1993).
[108] Stiley v. Block, No. 13555-1-III, slip op. at 6 (Wash.App. July 18, 1995).
[109] Marsh, 57 Wash.App. at 619-20, 789 P.2d 792.
[110] Id. at 624, 789 P.2d 792.
[111] 84 Wash.2d 239, 525 P.2d 228 (1974).
[112] 68 Wash.App. 551, 844 P.2d 452, review denied, 121 Wash.2d 1025, 854 P.2d 1085 (1993).
[113] Id. at 559, 844 P.2d 452.