Iradj Mark SHAHRIARY,
Plaintiff—Appellant,

v.

TELEDESIC LLC; Eagle River Investments LLC; Craig McCaw; Dennis Weibling, Defendants—Appellees.

No. 02–35267.
D.C. No. CV–00–01755–JCC.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 5, 2003.

Decided March 13, 2003.

Appeal from the United States District Court for the Western District of Washington, John C. Coughenour, District Judge, Presiding.

Before REINHARDT, W. FLETCHER and GOULD, Circuit Judges.

MEMORANDUM *

The plaintiff-appellant Iradj Mark Shahriary appeals the district court's grant of summary judgment in favor of defendants on his claims for: (1) intentional and negligent misrepresentation; (2) national origin

---

and age discrimination; (3) wrongful termination in violation of public policy; and (4) breach of contract and breach of the covenant of good faith and fair dealing. For the following reasons, we affirm the decision of the district court in its entirety.[1]

### 1. Intentional and Negligent Misrepresentation

To state a claim for fraudulent misrepresentation under Washington law, a plaintiff must establish the following nine elements by clear, cogent, and convincing evidence: (1) a representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff. *Stiley v. Block,* 130 Wash.2d 486, 925 P.2d 194, 204 (1996). To state a claim for negligent misrepresentation, a plaintiff must establish that: (1) the defendant supplied false information to the plaintiff; (2) the plaintiff justifiably relied upon the information; (3) the defendant failed to exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss as result. *Janda v. Brier Realty,* 97 Wash.App. 45, 984 P.2d 412, 415 (1999).

■ Shahriary alleges three distinct categories of misrepresentation. First, Shahriary points to statements made prior to his acceptance of the position at Teledesic concerning the level of responsibility and authority he would be given as president. Specifically, he states that Hooper (then co-CEO) told him, "We would like to talk to you about taking my job as president of Teledesic, replacing me." He states that Hooper also said: "[A]s far as you just don't want to do technical, this time we will have you run or be in charge of the whole thing. In fact, we will put a marketing and financial team under you so you can run the whole thing, the whole thing."

Shahriary could not have reasonably relied on these statements. Subsequent to his meeting in Washington, Shahriary was given a formalized written employment offer. That letter specifically stated that the details of his employment would be "addressed in a more formal contract [ ] which [would] promptly be prepared *after the substance and content of [his] relationship with Teledesic [had] been defined."* (Emphasis added.) Shahriary thus could not reasonably have believed that these generalized statements concerning the authority he would be given were concrete promises to which Teledesic was committing itself, given that this letter (which he received and signed subsequent to his initial meeting with Hooper) clearly indicated that "the substance and content" of his relationship with Teledesic had yet to be defined.

■ Second, Shahriary argues that Teledesic made a false representation when it promised him a seat on the board of directors. The letter of employment Shahriary received and signed, however, stated only that a "board seat will be made available to you at the appropriate time." Although Shahriary claims that Weibling told him he would receive a seat as soon as a vacancy became available, it was unreasonable for Shahriary to rely on this statement. Weibling's statement was not incorporated into the text of the letter, and

1. The parties are familiar with the facts, and they will be recounted here only as necessary to explain our decision.

Shahriary knew that any appointment would require a vote from the board, something outside the control of Weibling. Moreover, the resignation of Boeing's representative in April did not result in a board "vacancy," because the seat was retired. Nor did any other vacancy arise during Shahriary's tenure at Teledesic.

■ Third, Shahriary argues that Weibling misrepresented the conditions under which his employment could be terminated. Weibling, however, merely explained to Shahriary his understanding of what "cause" meant, and the letter signed by Shahriary clearly indicated that a formal definition would be worked out in a future formal contract. Shahriary has produced no evidence indicating that Weibling's statements were false when made. Weibling explained that "for cause" termination was very rare, and that Teledesic generally would relieve an employee from his or her duties while continuing to pay under the contract, rather than invoke the "for cause" clause. This is precisely what Teledesic did in Shahriary's case.

In sum, Shahriary has failed to raise any triable issue on his misrepresentation claims. Therefore, we affirm the district court's grant of summary judgment as to these claims. Shahriary also brought suit under California Labor Code § 970. To state a claim under § 970, a plaintiff must establish, as a threshold matter, a knowingly false representation by the defendant. See Funk v. Sperry Corp., 842 F.2d 1129, 1133 (9th Cir.1988) (in order to make out a claim for misrepresentation pursuant to section 970, plaintiff must prove the elements of a fraud claim, including scienter and justifiable reliance). For the reasons discussed above, Shahriary cannot do so. His § 970 claim was therefore also properly dismissed.

## 2. National Origin and Age Discrimination

To establish a prima facie case of discrimination under Title VII, a plaintiff must show: (1) that he is a member of a protected class; (2) that he was qualified for the job; (3) that despite his qualifications he was fired; and (4) that the position was filled by a member of a non-protected class. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). "Once a prima facie case has been made, the burden of production shifts to the defendant, who must offer evidence that the adverse action was taken for other than impermissibly discriminatory reasons." Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir.1994). If the defendant offers such a reason, the plaintiff must respond with "specific and substantial" circumstantial evidence that the defendant's articulated reason for the adverse action was pretextual in order to avoid summary judgment. See Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1222 (9th Cir.1998).

Shahriary alleges that Teledesic terminated his employment because of his national origin and his age. Assuming arguendo that Shahriary has established a prima facie case of national origin and age discrimination, Teledesic argues that it had non-discriminatory motives for its decision to remove Shahriary from the position of president. Specifically, Teledesic cites to employee complaints about Shahriary's management style. Shahriary does not dispute that such complaints were lodged, but contends that he has provided sufficient circumstantial evidence to show that Teledesic's reliance on these complaints as a reason for firing him is pretextual.

■ As to his national origin claim, Shahriary points to the following remarks to show pretext. McCaw allegedly told Shahriary on June 3, 1999 (the day Shahri-

ary learned McCaw wanted Weibling to become CEO), "You know you can't be a CEO." In addition, Shahriary states that McCaw told him during a discussion concerning the strategic plan and vision of Teledesic, "You people do things differently than we do in this country," or "something to that effect." Shahriary also points to Weibling's statement that Shahriary's practice of taking notes in a foreign language during the Motorola negotiations made him uncomfortable. Weibling stated that he felt Shahriary's notes were not related to the discussions because he never saw Shahriary refer back to them. He stated that this note-taking made him uncomfortable because "it was being disengaged, that it just didn't seem to be relevant to dealing with people on a very critical kind of make-it or break-it contract for Teledesic, that we were involved in very complex negotiations, that that [sic] seemed to me that he wasn't as engaged."

■ As to his claim of age discrimination, Shahriary points to no specific evidence tending to show that Teledesic's proffered reasons for terminating him were pretext for age-based discrimination. While conceding that he has no "smoking gun," Shahriary argues that the "totality of the circumstances" demonstrates that: (1) appellees were highly motivated to acquire his technical skills for negotiation of a billion dollar contract with Motorola; (2) appellees were willing to "overlook" his age in order to acquire his services; and (3) after he successfully negotiated the Motorola contract and his services were no longer essential, he was dismissed from the "inner circle" of appellees, in part, because he was older and did not fit in. He points to no evidence, however, to support this conjecture. Indeed, the uncontradicted evidence tends to refute Shahriary's theory that Teledesic hired him in order to exploit his technical expertise dur-

ing the Motorola negotiations. Shahriary's start date was initially delayed because the company wanted to conclude the Motorola negotiations *before* Shahriary began work.

Shahriary has failed to produce "specific and substantial" circumstantial evidence of pretext as to either his national origin or his age discrimination claims. Summary judgment was therefore appropriate. Although the statements relied upon by Shahriary in support of his national origin claim, viewed in the light most favorable to him, might suggest ethnic bias, Shahriary has produced no evidence showing a causal connection between those statements and his termination. Without such a connection, the statements can only be interpreted as stray remarks, insufficient to save a claim from summary judgment. *See Nesbit v. Pepsico, Inc.,* 994 F.2d 703, 705 (9th Cir.1993) (comments by plaintiff's superior that "we don't necessarily like grey hair" and "don't want unpromotable fifty-year-olds around" insufficient circumstantial evidence of pretext to withstand summary judgment).

### 3. Wrongful Termination in Violation of Public Policy

Washington recognizes "a cause of action in tort for wrongful discharge if the discharge of the employee contravenes a clear mandate of public policy." *Thompson v. St. Regis Paper Co.,* 102 Wash.2d 219, 685 P.2d 1081, 1089 (1984). Washington courts employ a four-part test to determine whether a plaintiff has stated a claim for wrongful discharge in violation of public policy: (1) the plaintiff must prove the existence of a clear public policy; (2) the plaintiff must prove that discouraging the conduct in which he or she engaged would jeopardize that public policy; (3) the plaintiff must prove that the public-policy-linked conduct caused the dismissal; (4)

the defendant must not be able to offer an overriding justification for the dismissal. *Ellis v. City of Seattle,* 142 Wash.2d 450, 13 P.3d 1065, 1070 (2000).

Shahriary premises his claim for wrongful discharge on two alleged violations of public policy by Teledesic. First, he argues Teledesic fired him because of his age and ethnicity. As explained above, however, Shahriary has failed to produce evidence of discrimination sufficient to withstand summary judgment. To the extent his wrongful discharge claim is premised on discrimination, therefore, it was properly dismissed. Second, he argues that Teledesic fired him because he complained that McCaw's plan to create "Newco" would disadvantage employee shareholders. He argues that the public policy of Washington requires directors and officers to exercise fiduciary duties toward minority shareholders.

■ Assuming without deciding that Shahriary has produced evidence indicating that McCaw's plan violated a clear public policy, and assuming without deciding that discouraging internal complaints like those made by Shahriary would jeopardize this public policy, summary judgment was nonetheless proper. Shahriary has produced no evidence showing that "the public-policy-linked conduct caused [his] dismissal," nor has he rebutted the "overriding justification for the dismissal" offered by Teledesic, *i.e.,* employee complaints about his managerial style. *Ellis,* 13 P.3d at 1070. Shahriary complained to McCaw about Newco in March. In April the plan to create Newco was scrapped. Shahriary was fired in July. Farzad Ghazvinian twice voiced similar concerns about the creation of Newco and its impact on employee shareholders to Hooper, who relayed his concerns to McCaw. Not only was Ghazvinian not fired for his complaints, but he was subsequently promoted.

### 4. Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing

■ The district court rejected Shahriary's claims for breach of contract and breach of the covenant of good faith and fair dealing because it found that Shahriary could not establish any damages. *See Long v. T–H Trucking Co.,* 4 Wash.App. 922, 486 P.2d 300, 302–03 (1971) (a claim for breach of an implied covenant is one of contract, not tort, and damages for its breach are measured by contract damages). Shahriary received every bit of compensation promised him pursuant to his employment contract, with the exception of a year-end bonus. Shahriary argues that his failure to receive this bonus creates recoverable contractual damages, thus saving his breach of contract and bad faith claims.

> Shahriary's signed employment offer describes the terms of this bonus: You will be *eligible* to receive an annual bonus *in the discretion* of Teledesic of *up to 50%* of base salary. However, if Teledesic has a tremendous year, you could approach 100% of your base salary. This bonus will be paid out in December or January (at company option) of each year *based on your performance.* You and the company will work together to mutually determine those objectives within 90 days of your start date.

(Emphasis added.) We agree with the district court that under the terms of their agreement, Teledesic had no obligation to award Shahriary a bonus. Its failure to do so, therefore, does not give rise to any recoverable damages. The district court therefore properly granted summary judgment on these claims.

### CONCLUSION

For the foregoing reasons, we affirm the decision of the district court in its entirety.

---

\* The panel unanimously finds this case suitable for decision without oral argument and Ap-pellants' request for oral argument is denied. *See* Fed. R.App. P. 34(a)(2).

\*\* This disposition is not appropriate for publi-