**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| STACY PERCIVAL-BIRCHARD, an individual, | DIVISION ONE |
| Appellant/Cross-Respondent, | No. 80820-6-I |
| v. | UNPUBLISHED OPINION |
| BRIAN CALDWELL, an individual, | |
| Respondent/Cross-Appellant. | |

DWYER, J. — Stacy Percival-Birchard appeals from the trial court's summary judgment orders granting Brian Caldwell's motion for summary judgment, denying Percival-Birchard's motion for summary judgment, and dismissing with prejudice her claims of breach of contract, fraud, negligent misrepresentation, unjust enrichment, and promissory estoppel. Additionally, Caldwell cross-appeals from the trial court's order denying his motion for an award of attorney fees and costs. Because there are genuine issues of material fact on Percival-Birchard's claims of breach of contract, fraud, and negligent misrepresentation, we reverse.

I

Between 2011 and 2017, Caldwell was the sole owner of Triple C Collective, LLC, which operated as a medical marijuana collective garden under

former RCW 69.51A.085 (2011), repealed by LAWS OF 2015, ch. 70, § 49.[1]

During this period, Triple C Collective accrued retail sales tax debt that was owed

to the Department of Revenue. The Department of Revenue eventually issued

two tax warrants against Triple C Collective based on its failure to pay retail sales

taxes. These warrants assessed Triple C Collective's outstanding tax debt,

including penalties and interest, to amount to $202,545.42. The warrants were

issued against Triple C Collective and were not issued against Caldwell.

Following the passage of Initiative Measure 502, which provided a legal

avenue for the sale of recreational marijuana in Washington, Triple C Collective

applied for a marijuana retailer license[2] with the Washington State Liquor and

Cannabis Board. To be issued a marijuana retailer license, Triple C Collective

was required to "be current in any tax obligations to the Washington state

department of revenue." WAC 314-55-020(14). To this end, Caldwell caused

Triple C Collective to enter into a payment agreement with the Department of

Revenue regarding the outstanding tax debt. The amount of payments made by

Triple C Collective under this payment agreement is unclear from the record.[3]

In March 2016, the revenue agent overseeing the tax debt owed by Triple

C Collective confirmed, via e-mail, to a marijuana licensing investigator from the

Liquor and Cannabis Board that Triple C Collective was "current on the payment

---

[1] Former RCW 69.51A.085(1) provided that "[q]ualifying patients may create and participate in collective gardens for the purpose of producing, processing, transporting, and delivering cannabis for medical use."

[2] A marijuana retailer license permits a licensee "to sell marijuana concentrates, useable marijuana, and marijuana-infused products at retail in retail outlets, regulated by the [Liquor and Cannabis Board] and subject to annual renewal." RCW 69.50.325(3)(a).

[3] In a declaration, Caldwell stated that, under the agreement, Triple C Collective made payments to the Department of Revenue in the amount of $7,000 per month. He does not state how many monthly payments Triple C Collective made.

arrangement." Triple C Collective was subsequently issued a marijuana retailer license.

After the license was issued, Caldwell decided to sell his membership interest in Triple C Collective. Percival-Birchard stated that she was informed by a broker that Triple C Collective's "license was available." Soon afterward, Percival-Birchard met with Caldwell at the broker's office "to discuss . . . how much he wanted for the license, and to negotiate." Percival-Birchard was under the impression that she was negotiating to purchase a marijuana retailer license.[4]

On January 9, 2017, Caldwell and Percival-Birchard entered into a contract under which Caldwell agreed to sell his membership interest in Triple C Collective to Percival-Birchard for $430,000.[5] This agreement stated that the "[c]ompany holds a marijuana retailer license numbered 352400 under Washington State Initiative 502, RCW 69.50, RCW 69.51A, and implementing regulations, all as amended (the 'License'), and such License is currently in good standing before the Washington State Liquor and Cannabis Board." Under the contract, Caldwell warranted that "the Membership Interest will be owned collectively by Buyers free and clear of any pledge, lien, claim, mortgage,

---

[4] During a deposition, the following exchange occurred between Caldwell's attorney and Percival-Birchard:
> Q. And I just want to back up just a little bit. What was your impression of what it was you were purchasing?
> A. A Washington State recreational marijuana license.

[5] Pursuant to the contract, Percival-Birchard acquired 50 percent of Caldwell's interest in Triple C Collective and an individual named Patrick Griffith acquired the other 50 percent. During her deposition, Percival-Birchard stated that Griffith was still a member of the company, but that he was not participating in the lawsuit because "he's a silent partner."

security interest, call, option, restriction, agreement or encumbrance of any kind."[6]

After Percival-Birchard acquired the membership interest in Triple C Collective, she changed the name of the entity through the Secretary of State to Green Token Tacoma Cannabis, LLC. In late 2017, Percival-Birchard received a telephone call from the revenue agent that oversaw Triple C Collective's tax debt. The agent informed Percival-Birchard that Triple C Collective owed taxes to the Department of Revenue in excess of $200,000.

That same day, Percival-Birchard sent a text message to Caldwell stating, "I don't know what agreement you thought we had but this is mine and I am not responsible for your debt!!! This was all suppose [sic] to be taken care of!!!" Percival-Birchard also sent a text message that contained a photograph of the contract signed by the parties. Caldwell responded by directing Percival-Birchard to contact a lawyer who was, at the time, contesting the legality of the retail sales tax debt imposed on collective gardens. According to Percival-Birchard, she was not aware of any tax liability in Triple C Collective's name before receiving the telephone call from the revenue agent.

In a letter dated October 23, 2018, and addressed to Green Token Tacoma Cannabis, the revenue agent overseeing Triple C Collective's tax debt

---

[6] This agreement additionally stated that
Seller will sell the Membership Interest collectively to Buyers and Buyers will purchase the same from Seller with each of Percival-Birchard and Griffith receiving equal 50% ownership interests in the Membership Interest. Seller will transfer the Membership Interest collectively to the Buyers free and clear of all liens, security interests, encumbrances, pledges, charges, claims, and restrictions on transfer of any nature whatsoever.

explained that Green Token Tacoma Cannabis was liable for the tax debt owed by Triple C Collective in the amount of $152,654.10. This amount equated to the tax liability owed by Triple C Collective absent penalties and interest.[7] Green Token Tacoma Cannabis subsequently entered into a payment agreement with the Department of Revenue.

On May 7, 2018, Percival-Birchard filed a complaint against Caldwell in the King County Superior Court. The complaint alleged the following causes of action: (1) breach of contract, (2) fraud, (3) negligent misrepresentation, (4) unjust enrichment, and (5) promissory estoppel. Both Percival-Birchard and Caldwell filed motions for summary judgment. On October 25, 2019, the trial court heard the motions. The trial court granted Caldwell's motion for summary judgment, denied Percival-Birchard's, and dismissed Percival-Birchard's complaint with prejudice. Subsequently, Caldwell filed a motion for an award of attorney fees and costs. The trial court denied this motion.

Percival-Birchard appeals. Caldwell cross-appeals.

II

Percival-Birchard first contends that the trial court erred by granting Caldwell's motion for summary judgment with regard to the breach of contract claim. We agree.

We review an order granting summary judgment de novo, performing the same inquiry as the trial court. Nichols v. Peterson Nw., Inc., 197 Wn. App. 491,

---

[7] The record does not indicate whether penalties and interest have since been imposed on Green Token Tacoma Cannabis. Accordingly, for the purposes of this opinion, we assume that the tax liability assessed against Green Token Tacoma Cannabis amounts to $152,654.10.

498, 389 P.3d 617 (2016). In doing so, we draw "all inferences in favor of the nonmoving party." U.S. Oil & Ref. Co. v. Lee & Eastes Tank Lines, Inc., 104 Wn. App. 823, 830, 16 P.3d 1278 (2001). "Summary judgment is proper if the record shows that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." U.S. Oil & Ref. Co., 104 Wn. App. at 830.

"A breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant." Nw. Indep. Forest. Mfrs. v. Dep't of Labor & Indus., 78 Wn. App. 707, 712, 899 P.2d 6 (1995). Moreover, "extrinsic evidence is admissible as to the entire circumstances under which the contract was made, as an aid in ascertaining the parties' intent." Berg v. Hudesman, 115 Wn.2d 657, 667, 801 P.2d 222 (1990). Accordingly, to determine the parties' intent,

> [t]he court may consider (1) the subject matter and objective of the contract, (2) the circumstances surrounding the making of the contract, (3) the subsequent conduct of the parties to the contract, (4) the reasonableness of the parties' respective interpretations, (5) statements made by the parties in preliminary negotiations, (6) usages of trade, and (7) the course of dealing between the parties.

Spectrum Glass Co. v. Pub. Util. Dist. No. 1 of Snohomish County, 129 Wn. App. 303, 311, 119 P.3d 854 (2005).

However, admissible extrinsic evidence does not include: (1) "[e]vidence of a party's unilateral or subjective intent as to the meaning of a contract word or term;" (2) "[e]vidence that would show an intention independent of the instrument; or" (3) "[e]vidence that would vary, contradict or modify the written word." Hollis v. Garwall, Inc., 137 Wn.2d 683, 695, 974 P.2d 836 (1999).

6

Here, there is evidence demonstrating that the parties' intent in entering into the contract was for Percival-Birchard, in consideration of $430,000, to acquire the authority to sell certain marijuana products pursuant to the marijuana retailer license held by Triple C Collective. Prior to entering into the contract, Percival-Birchard stated that she was informed by a broker that Triple C Collective's "license was available." Soon after being so informed, Percival-Birchard met with Caldwell at the broker's office "to discuss . . . how much he wanted for the license, and to negotiate." During these discussions, Percival-Birchard was under the impression that she was negotiating to purchase a marijuana retailer license. Indeed, the contract between the parties provided that the "[c]ompany holds a marijuana retailer license."

Notably, the contract between Caldwell and Percival-Birchard contained the following warranty:

> 5.   Warranties and Representations of Seller.  Seller hereby represents and warrants to Buyer as follows:
>
> 5.1   Upon execution and delivery of the Assignments, the Membership Interest will be owned collectively by Buyers free and clear of any pledge, lien, claim, mortgage, security interest, call, option, restriction, agreement or encumbrance of any kind.

This provision plainly warranted that the membership interest was free and clear of any restrictions of any kind. Another provision of the contract provided that "Seller will transfer the Membership Interest collectively to the Buyers free and clear of all . . . restrictions on transfer of any nature whatsoever." Because the issues, as they are presented to us, do not involve any restrictions on

transfer, we must determine whether the membership interest was "free and clear of any . . . restriction . . . of any kind." It was not.

By purchasing a membership interest in a company that held a marijuana retailer license, Percival-Birchard obtained the authority to sell certain marijuana products pursuant to that license. "A marijuana retailer license allows the licensee to sell . . . useable marijuana, marijuana concentrates, marijuana-infused products, marijuana paraphernalia, and lockable boxes to store marijuana at retail in licensed retail outlets to persons twenty-one years of age and older." WAC 314-55-079(1). "'Licensee' . . . means any person or entity that holds a marijuana license, or any person or entity who is a true party of interest in a marijuana license." WAC 314-55-010(18). Significantly, "[a]ll LLC members" are the "[t]rue parties of interest" in a marijuana license held by a limited liability company. WAC-314-55-035(1). Therefore, a member of a limited liability company that holds a marijuana retailer license has the authority, pursuant to that license, to sell certain marijuana products.

The tax debt owed by Triple C Collective imposed a restriction on the membership interest by qualifying[8] Percival-Birchard's ability to sell certain marijuana products pursuant to the marijuana retailer license. Indeed, chapter 314-55 WAC states, "A person or entity must meet certain qualifications under this chapter to receive a marijuana license, *which are continuing qualifications required to maintain the license.*" WAC 314-55-015(1) (emphasis added). One

---

[8] A prominent legal dictionary defines "restriction" as a "[c]onfinement within bounds or limits; a limitation or qualification." BLACK'S LAW DICTIONARY 1508 (10th ed. 2014).

such qualification is that "[a]pplicants applying for a marijuana license must be current in any tax obligations to the Washington state department of revenue . . . [and] must sign an attestation that, under penalty of denial or loss of licensure, that representation is correct." WAC 315-55-020(14). Triple C Collective's tax debt added a qualification to Percival-Birchard's ability, as a member of a limited liability company that held a marijuana retailer license, to sell certain marijuana products under that license: namely, that the company be current on the $152,654.10 in tax debt owed to the Department of Revenue. Thus, the tax debt imposed a restriction on the membership interest sold by Caldwell to Percival-Birchard.

On this record, the membership interest was, at a minimum, restricted.[9] Accordingly, the trial court erred by granting Caldwell's motion for summary judgment with regard to the breach of contract claim.

III

Percival-Birchard next contends that the trial court erred by granting Caldwell's motion for summary judgment with regard to the fraud claim. We agree.

The elements of fraudulent misrepresentation include:

> (1) [R]epresentation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff.

---

[9] Given the nature of our decision, there is nothing that prevents Percival-Birchard from arguing in subsequent proceedings that there were additional restrictions on her membership interest that are not addressed in this opinion, if the facts warrant such an assertion.

Stiley v. Block, 130 Wn.2d 486, 505, 925 P.2d 194 (1996).

A genuine issue of material fact exists as to whether Caldwell made a fraudulent misrepresentation to Percival-Birchard. Indeed, Caldwell represented that "the Membership Interest will be owned collectively by Buyers free and clear of any . . . restriction . . . of any kind." As explained in the previous section, this representation was false.

There are also facts demonstrating that this representation was material. Again, the record indicates that the parties' intent in entering into the contract was for Percival-Birchard, in consideration of $430,000, to acquire the authority to sell certain marijuana products pursuant to the marijuana retailer license held by Triple C Collective. Yet the tax debt owed by Triple C Collective added a significant barrier to Percival-Birchard's ability to do so.

Moreover, because Caldwell was aware of the tax debt owed by Triple C Collective, there is a genuine issue of material fact as to whether he knew that the representation made to Percival-Birchard was false.

Furthermore, there are facts indicating that Caldwell intended Percival-Birchard to act upon the misrepresentation and that Percival-Birchard had no knowledge of the tax debt prior to entering into the contract. While Caldwell was in the process of selling his membership interest to Percival-Birchard, the revenue agent overseeing Triple C Collective's tax debt contacted Caldwell several times. In a deposition, the agent stated that, after the sale of the membership interest was finalized, she "asked [Caldwell] for full payment and was told there would not be full payment coming." According to the agent,

10

Caldwell "indicated he never intended to pay [the tax debt] and that the new owner would be assuming the liability and setting up a payment plan." Moreover, the agent stated: "From what was related to me by Mr. Caldwell, the statement made to me was that the new buyer would be aware [of the tax debt] and would be setting up a payment plan because they assumed the liability." However, Percival-Birchard stated that she was not aware of the tax debt before entering into the contract with Caldwell. Therefore, genuine issues of material fact exist as to whether Caldwell intended Percival-Birchard to act upon the misrepresentation and whether Percival-Birchard knew of the tax debt prior to entering into the contract.

There is also a genuine issue of material fact as to whether Percival-Birchard relied on Caldwell's representation that the membership interest was free and clear of any restrictions of any kind. Indeed, in the declaration filed in support of her motion for summary judgment, Percival-Birchard stated, "Had I known that Triple C Collective was subject to the tax liability, I would not have bought Brian Caldwell's Membership Interest."

Next, there are facts indicating that Percival-Birchard had a right to rely on Caldwell's representation. "'[T]he right to rely on representations is inseparably connected with the correlative problem of the duty of a representee to use diligence in respect of representations made to him.'" Skagit State Bank v. Rasmussen, 109 Wn.2d 377, 384, 745 P.2d 37 (1987) (quoting Williams v. Joslin, 65 Wn.2d 696, 698, 399 P.2d 308 (1965)). Moreover, "[t]he extent to which the representee must verify the truth of the representation, if he or she

11

must do so at all, depends upon the circumstances of the case." Skagit State Bank, 109 Wn.2d at 384. In her deposition, Percival-Birchard stated that she did not engage in due diligence activities concerning Triple C Collective's liabilities because Triple C had not conducted any business under the marijuana retailer license:

> Because I had already known that he hadn't opened the license, . . . there was no point in looking into the license. [Triple C Collective LLC] hadn't had any tax liability, it hadn't had any product in the store, it hadn't had any [Liquor and Cannabis Board] violations, it hadn't had any tax revenue, because it hadn't been opened.
> . . . .
> Because I'm in the industry, . . . I knew Triple C had never been opened.

Caldwell asserts that Percival-Birchard should have been aware of the tax debt because a company of which she was a part owner, Green Collar Club, LLC, was a party to a lawsuit, along with Triple C Collective, contesting the legality of the retail sales tax imposed on medical marijuana collective gardens. However, unlike Triple C Collective, Green Collar Club was current on its taxes owed to the Department of Revenue during the lawsuit. Further, Percival-Birchard did not have access to the "financial situations" of other companies that were a party to the lawsuit. According to Percival-Birchard, "As far as we knew, everybody had paid their taxes." Thus, a genuine issue of material fact exists as to whether Percival-Birchard had a right to rely on Caldwell's representation.

Finally, because the retail sales tax imposed on Green Token Tacoma Cannabis amounted to $152,654.10, there is evidence that Percival-Birchard suffered damages from Caldwell's representation.

12

Aside from fraudulent misrepresentation, there is also a genuine issue of material fact as to whether Caldwell defrauded Percival-Birchard by failing to disclose the tax debt. Our Supreme Court has explained that "allegations of fraud may be asserted where one party to a transaction has a duty to speak because that party possesses superior knowledge yet that party fails to state . . . an asserted material fact." Haberman v. Wash. Pub. Power Supply Sys., 109 Wn.2d 107, 166, 744 P.2d 1032, 750 P.2d 254 (1987). Indeed, an individual may be liable for fraud in the following circumstance:

> "(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.
> (2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,
> . . .
> (e) *facts basic to the transaction*, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, *would reasonably expect a disclosure of those facts*."

Haberman, 109 Wn.2d at 168 (quoting RESTATEMENT (SECOND) OF TORTS § 551 (AM. LAW INST. 1977)).

The existence of the tax debt owed by Triple C Collective was a fact basic to the transaction. By the plain terms of the contract, Percival-Birchard agreed to pay Caldwell $430,000 for his membership interest in Triple C Collective. However, the debt owed by Triple C Collective, absent penalties and interest, amounted to $152,654.10. This debt effectively required Percival-Birchard to pay

13

$582,645.10, instead of $430,000, for the membership interest. It was a fact basic to this transaction that there were no undisclosed liabilities in the company's name that would substantially increase the amount that Percival-Birchard agreed to pay for the membership interest.

Having determined that the existence of the tax debt was a fact basic to the transaction, a fact question remains as to whether Caldwell was under a duty to disclose the debt to Percival-Birchard. In particular, genuine issues of material fact exist as to whether (1) Caldwell knew that the existence of the debt may have justifiably induced Percival-Birchard to refrain from entering into the contract, (2) Caldwell knew that Percival-Birchard was about to enter into the contract under a mistake as to the existence of the debt, and (3) Percival-Birchard, because of her relationship with Caldwell, the customs of the trade, or other objective circumstances, would have reasonably expected Caldwell to disclose the existence of the debt.[10]

Accordingly, the trial court erred by granting Caldwell's motion for summary judgment with respect to the claim of fraud.

---

[10] Because there are disputed facts bearing upon Caldwell's duty to disclose the existence of the debt, those questions must be determined by a fact finder. The role of the court in deciding questions of law and the role of the fact finder has been explained:

> Whether there is a duty to the other to disclose the fact in question is always a matter for the determination of the court. If there are disputed facts bearing upon the existence of the duty, as for example the defendant's knowledge of the fact, the other's ignorance of it or his opportunity to ascertain it, the customs of the particular trade, or the defendant's knowledge that the plaintiff reasonably expects him to make the disclosure, they are to be determined by the jury under appropriate instructions as to the existence of the duty.

RESTATEMENT § 551(2)(e) cmt. m.

IV

Percival-Birchard next asserts that the trial court erred by granting Caldwell's motion for summary judgment with regard to the negligent misrepresentation claim. We agree.

The elements of negligent misrepresentation are:

(1) the defendant supplied information for the guidance of others in their business transactions that was false, (2) the defendant knew or should have known that the information was supplied to guide the plaintiff in his business transactions, (3) the defendant was negligent in obtaining or communicating the false information, (4) the plaintiff relied on the false information, (5) the plaintiff's reliance was reasonable, and (6) the false information proximately caused the plaintiff damages.

Ross v. Kirner, 162 Wn.2d 493, 499, 172 P.3d 701 (2007).

Because there is a genuine issue of material fact as to whether Caldwell intentionally defrauded Percival-Birchard, there is also one as to whether Caldwell engaged in negligent misrepresentation. Indeed, if the claim of fraudulent misrepresentation remains viable to go to the jury, Caldwell should not be allowed to escape liability by claiming that he was merely negligent in his failure to disclose the existence of the tax debt.

It is worth noting that, unlike for fraud, "[a]n omission alone cannot constitute negligent misrepresentation, since the plaintiff must justifiably rely on a misrepresentation." Kirner, 162 Wn.2d at 499. Here, however, Caldwell falsely represented that "the Membership Interest will be owned collectively by Buyers free and clear of any . . . restriction . . . of any kind."

Accordingly, the trial court erred by granting Caldwell's motion for summary judgment with respect to the claim of negligent misrepresentation.

15

V

Percival-Birchard also asserts that the trial court erred by granting Caldwell's motion for summary judgment with respect to the claims of unjust enrichment and promissory estoppel. To the contrary, in making these rulings, the trial court acted properly. "Unjust enrichment is the method of recovery for the value of the benefit retained *absent any contractual relationship* because notions of fairness and justice require it." Young v. Young, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008) (emphasis added). Similarly, "the doctrine of promissory estoppel does not apply where a contract governs." Spectrum Glass Co.,129 Wn. App. at 317. Because there was an executed contract between the parties, we affirm the trial court's dismissal of Percival-Birchard's claims of unjust enrichment and promissory estoppel.

VI

On cross-appeal, Caldwell asserts that the trial court erred by denying his motion for an award of attorney fees and costs. Because Caldwell is no longer the prevailing party, he is not entitled to an award of attorney fees in the superior court. [11] In turn, it is no longer necessary for us to evaluate whether the trial court improperly concluded that the contract provision in question was within the ambit of RCW 4.84.330. We do not express an opinion as to whether the trial court was correct in its initial determination of this question.

---

[11] Caldwell additionally requests an award of attorney fees on appeal pursuant to RAP 18.1. We deny this request.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

_____
Dwyer, J.

We concur:

_____        _____
Coburn, J.                              Mann, C.J.